Judge Marshall
delivered the Opinion of the Court.
This action of ejectment was brought upon the demise 0£ James Logan, who claimed title to the land in con- ° .„ . . . test under a sheriff s sale and deed, made in 1829, m virtue of two executions which issued on a judgment and decree for costs against the heirs of Richard Steele, in their own right.
i The plaintiff, to show title in the defendants in the execution, exhibited a patent to, Jacob Myers, for one thousand acres, on a preemption warrant, covering the land in controversy, and several deeds, by which the ' title was transmitted from him to David Logan, and read the record of a suit in chancery by Barnard Mc-Nitt against David Logan, for a conveyance, which resulted in a decree and commissioner’s deed conveying one half of the preemption, including the land in contest, to the complainant, in 1816. Pie also read the record of a suit in chancery, by Martha Steele, the widow, and her children, the heirs of Richard Steele, against, Barnard- McNitt, alleging that Barnard McNitt had sold the land to Joseph McNitt, and that he had . sold it to Richard Steele, and that he, by his will, proved in 1809, had devised it to the complainant, Martha Steele, and the other complainants, his. children; and exhibiting, in support of these allegations, a writing purporting to be the deed of Barnard McNitt, conveying one half of the preemption to Joseph McNitt, in December, 1803, and a writing - purporting to be the deed of J. McNitt, by attorney in fact, conveying the same land to Richard Steele, in October, 1809; also, the will of Richard Steele, devising the land now in contest to Martha Steele. This suit resulted in a decree directing a conveyance to the complainants, and a commissioner’s deed, made in 1817, purporting to convey *75 the land from Barnard McNitt, to the heirs of Richard Steele — omitting the name of Martha Steele, his devi-see. The plaintiff also read a power of attorney from J. McNitt, dated in 18.03, authorizing the deed to Richard Steele.'
Instructions.
The defendants read the will of Richard Steele, devising the land to Martha Steele, and also her will and the codicil thereto, proved in 1822 and 1825, by which she directs the land to be sold by her executors, and the proceeds to be vested in another tract, for the use and benefit of the children of her son John Steele. From the orders of the County Court in relation to this will, it appears that William Steele, one of three executors therein named, qualified as executor in 1824, and that in 1830, an order was made appointing William Mayo administrator with the will annexed, of Martha Steele; and Mayo, as a witness for the defendants,-stated that he had sold the land to Moore, as administrator with the will annexed, and. had conveyed it to-McCalla. It was also proved, that the land had been in the possession of Richard Steele for some years before his death, and remained afterwards, until the sale under the plaintiff’s executions, in possession of or under the family, or some of them, one of the witnesses stating that it had been held under Mrs. Steele, during her life, and that the heirs had not claimed it since.
Other evidence was introduced not necessary to be detailed. And the plaintiff moved the Court to instruct the jury, “ that, if they find'from the evidence, that no sale of the estate had been made as provided for by the will of Martha Steele, the land descended to her heirs, and if they further find that said one hundred acres of land devised to Martha Steele by the will of Richard Steele, was embraced in the deed from Barnard McNitt to the defendants in the execution and judgment (Steele’s aforesaid,) and that the defendants in that judgment and execution were the heirs both of Richard and Martha Steele, deceased,,the land was liable to the execution- and sale given in- evidence.”
But the Court refused this instruction, and instructed the,jury that, by the will of Richard Steele, the land *76 passed to his wife Martha, and by her will it passed to the children of John Steelé, subject to the right of her executors to sell it, and that it neither descended to the defendants in the execution, as heirs to Richard Steele, their fathei’, nor Martha Steele, their mother; was not liable to the plaintiff’s execution, and of consequence, that nothing passed to the lessor of the plaintiff by the sheriff’s sale and dfeed.'
Where land hag been conveyed witn warranty, a title afterwards grantorf inures to the benefit of his heirs of thegran! tee, if he has died the grantee has devised the land and died, the title afterwards acquired by the grant- or,vvn], it seems, (sed quere) in-of6^ devisees1 according to their estse°tIVe mtei
To this opinion of the Court the plaintiff excepted, and a verdict and judgment having passed against him, he prosecutes a writ of errror.
The substantial question on these instructions, is w[letiier the heirs of Richard Steele, who were also the ... heirs of Martha Steele, had such title and interest in lan-d as was su^ject to the plaintiff’s executions. In determining this question we shall consider the exhibits above referred to, contained in the record of the su¡t of Steele’s Heirs &c. against Barnard McNitt, and which were read m evidence by the plaintiff, as being— what they purport to be — the deeds of Barnard and _ . * -~±. T „ , . . T Joseph Mclmt — the power of attorney under which the iatter deed was made having been also read as evi- . . ° dence by the plaintiff, and for no other purpose, as it wou^ seem, but to support the deed. This being premised, we'are of opinion that, although, when those deeds were made, neither of the grantors had the legal title, yet when afterwards, in 1816, the title was conveyed by a commissioner to Barnard McNitt, that 6on-
veyance inured by operation of law to the benefit of his grantee, so as to pass the legal title to him. This was virtually decided in the case of Logan vs. Steele’s Heirs, 4 Mon. 430, and is to be deduced from the principles established in the cases of Aldridge vs. Kincaid, 2 Litt. 393, and Massie vs. Sebastian, 4 Bibb, 436. The consequence is, as stated in the case of Logan vs. Steele’s Heirs, supra, that Barnard McNitt had not the legal title when the commissioner’s deed was afterwards made, purporting to convey his title to the heirs of Richard Steele, and consequently, that it passed nothing from McNitt to the grantees.
But upon the same principle on which the convey- *77 anee of the title to Barnard McNitt, inured to the benefit of his previous grantee and warrantee, Joseph Mc-Nitt, and vested the title in him, this vesting of the title in Joseph would also have operated to the benefit of his previous grantee and warrantee, Richard Steele, if he had then been alive (4 Mon. 430;) and he being then dead, we have no doubt that if he had died intestate, the legal title acquired by his grantor, would, on the same principle, have vested in his heirs, to whom his equity would have descended. And as he had made a will, which is a legal conveyance, devising his interest in this preemption to his widow and children, we are strongly inclined to the opinion that the legal title, when it came to his grantor, vested in the devisees, according to their respective interests under the will. So that Martha Steele, to whom the land in contest was devised, had in fact the legal title, when the commissioner, in 1817, made the conveyance in the name of Barnard McNitt to Steele’s heirs.
Land is not subject to execution for the debt of a mere trustee, in whom the legal title happens to be vested. But, if the trustee is heir of the cestui que trust, upon the death of the latter, the land relieved of the trust, by the union of both interests, will be subject to the levy— unless that conse quence is preven ted by the provisions ofa will, or something done in pursuance of one.
If this be so — which however we do not decide — it is apparent that, upon the death of Martha Steele, her heirs, who are also the heirs of Richard Steele, and were the defendants in the executions above referred to, had, by descent from her, such title and'.interest in the land as were subject to execution, unless by her will, either the'title, or the beneficial interest, or both, were so devised as that the land could not be subjected to sale as theirs. Or if the title conveyed to Barnard Mc-Nitt, in 1816, vested by operation of law in the heirs of his remote grantee, Richard Steele, although during the life of Martha Steele, to whom the land was devised, they would have held the title merely as trustees for her, and although such a mere nalted title, bound by an open trust appearing of record, was not subject to execution for their debt, yet, upon her death, the title was relieved from the trust, by a union with it of the beneficial interest by descent from her, except so far as such union was obstructed by the provisions of her will, or defeated by any thing done in pursuance of it. So that in either of these alternatives, the liability of the land to execution in their hands, depends, in the first *78 instance, upon the true construction and effect of Mrs. Steele’s will.
In a suit instituted by a widow and cKildren, to obtain the legal ti tie to land devised to them, the right of the widow, as well as that of the children, was established; but the deed, made by a commissioner, to carry the decree into effect, conveyed the land to the heirs of the devisor only, omitting the name of the widow : held, that she is not, by this, divested of her title, nor estopped from asserting it. The omission of her name as a grantee in the deed, was proba bly an error of the commissioner; or ifafraud— a fraud upon, not by, her, and she is not concluded by it.
A will directed that the proceeds of the testator’s land — which the executors were authorized to sell or rent — should be applied to relieve such of her children or grand children as might be most in want: but, by a codicil, she declared her wish and desire that her executors should sell the land, and in-
Another alternative has, indeed, been pressed in argument for the plaintiff, which, if adopted, would place the liability of the land to the execution against the heirs, and the plaintiff’s right to recover on the sheriff’s deed, beyond question. It is contended that Martha Steele was divested of whatever title or interest she had in the land, or estopped from asserting it, by reason of the commissioners’s deed of 1817, which purports to convey the title of Barnard McNitt to the heirs alone, in a suit and under a decree in which Mrs. Steele was a party. But although there are cases in which the owner of land will not be permitted to assert his title after encouraging the purchase of the land from another, this is certainly not one of them. There was no purchase by the heirs, no consideration passing from them, and in fact no proof, or even presumption, that Mrs. Steele was aware of the omission of her name from the deed. The probability is, that it was a mere error or inadvertence of the commissioner, unnoticed at the time by the Court or the parties. Or' if there was any fraud in the case, it was a fraud upon Mrs. Steele, and not by her. There was nothing, therefore, in the transaction to bind the conscience of Mrs. Steele, or to estop her from the assertion of any title which she had independently of that which passed by the direct operation of the deed. And the deed as already intimated passed nothing by its own force.
The heirs then having had, either no title, or a mere trust title, in the land up to .the death of Mrs. Steele, we return to the enquiry whether, upon her death, any such interest descended to them as rendered the land liable to execution for ■ their debts. And this is to be tested by the following clauses of Mrs. Steele’s will.
The body of the will contains, this provision: “ The “ proceeds of my land, whether sold or rented (and my “ executors are authorized to either sell or rent it, as “ they may think fit,) shall,be applied by my executors, “ to relieve those of my children or grand childi’en that “ may be most in want.” The codicil contains the fob *79 lowing: “As a codicil &c. it is my wish and desire that “ my executors do sell my one hundred acres of land in “ Fayette county, Kentucky, and the proceeds of the “ sale of said land to be laid out for a tract of land, by « my executors, for the use and benefit of the children « of my son John Steele, that he now has or that he « may hereafter have.”
vest the proceeds in other land, for the use and benefit of the children of one of her sons: held, upon consideration of the whole will, and the intention thereby manifested — by which its effect must be de termined — that the entire interest in the land passed by tjie will, to the desig nated grand children, for whose benefit it was to be sold, leaving no beneficial interest to descend to the heirs, and if the legal title vested in them, and remained during the interval between the testator’s death and the sale of the land, it was a bare trust held for the benefit, of the devisees, and not subject to an execution against the heirs.
It is manifest from a comparison of these two clauses that the first, so far as it gives to the executors, either any interest in the land, or any discretion as to the disposition to be made of it, or of the proceeds of rent or sale, is repealed by the second, which leaves in them a mere naked power to sell, and directs peremptorily in what manner and for whose benefit the proceeds shall be disposed of. Looking merely to the fact, that the will makes no other direct disposition of the land but that which is contained in the power and directions given to the executors to sell it — we had at first been inclined to the opinion that, until this power should be actually exercised, whatsoever title or interest Mrs. Steele had, descended to her heirs, subject to be divested by a sale under the will, and subject to no other trust but that it should be surrendered when such sale took place. And such probably would have been the determination of a court of law upon that single fact appearing in the will. Coke Litt. 236, a; 2 Thomas’ Coke, 118.
But the cardinal rule in giving construction and effect to wills, is to ascertain the intention of the testator, not from a single circumstance or provision in the will, which may relate expressly to ttife subject of a particular devise, but from the whole will taken together. And if the intention, thus ascertained, be consistent with the rules of law, it will be regarded as the effective law of the subject to which it relates, in a Court of Law, as well as in a Court of Equity. :
Upon further consideration of the two clauses of the will which have been quoted, we are of opinion that, although the executors have nothing in the land, but a mere power to sell, the will creates, also, an interest in the persons for whose benefit the sale was to be made, and that for the effectuation of that interest, according *80 to the intent of the'will, the power not only attached, immediately upon the death of the testator, but might an(j should have been exercised with all convenient des-patch. And the beneficiaries might, by application to a Court of -Equity, have coerced a sale by the executors, and a conveyance by the,heirs, of whatever title they may have had, at any time after the death of'Mrs. Steele. It is manifest, therefore, that the interest of the beneficiaries under the will was intended to commence immediately upon the death of the testator; and there being, in fact, no beneficial interest which, according to her intention as manifested in the will, was left undevised, there was none which could descend to the heirs. This being the constructive effect of the will, in a Court of Law as well as a Court of Equity, it follows that whatever title may have descended to the heirs of Martha Steele, or may have remained in them, on her death, as the heirs of Richard Steele, being held by them merely in trust for the purposes of the will, could neither carry with it nor draw to it any interest disposed of by the will; and that whatever they may have received, though received as incident to the title, must have been held, like the title itself, subject to the trust.
We conclude, therefore, that the heirs of Richard Steele had no such interest in the land in question, either as heirs of their father, Richard Steele, or as heirs of their mother, Martha Steele, as was subject to sale under execution against them; and that the.sheriff’s deed passed no such title to the plaintiff as would authorize a recovery of the land, even if it had not been sold under the authority and according to the directions of the will. It is therefore unnecessary to enquire whether there was sufficient proof on the trial, that a sale had been made under the will.
There being according to this review of the case, no substantial error, either in refusing the instruction asked for by the plaintiff, or in giving that which was given, the judgment is affirmed.