DICKERSON'S
HEIRS, &c.
vs.
TALBOT'S
Ex'ORS., &c.

---

## Dickerson's Heirs, &c. vs. Talbot's Ex'ors., &c.

Case 14.

### APPEAL FROM GALLATIN CIRCUIT.

1. Clerks of district courts in Kentucky were authorized to take the acknowledgement of deeds only when the land lay in the district of which they were clerks, (Stat. Law, 436,) nor had such clerks authority to take such acknowledgement after the time for recording the deed had elapsed. (3 Mar. 43.)
2. Where a plaintiff in ejectment shows a right to recover any part of the land sued for, though not as much as he claims, he has a right to recover to that extent, and a peremptory instruction to find for defendant is erroneous.
3. A ground assigned for a new trial, such as appears to have existed, if the bill of exceptions does not show it, will not avail in the Court of Appeals.
4. A title acquired by a grantor with warranty after the date of his conveyance, enures to the benefit of his prior grantee. (4 Mon. 430; 7 Dana, 76.
5. The bill of exceptions filed in the suit, is the only means by which the Court of Appeals must decide what evidence was before, and what excluded from the jury.
6. The court has a right to compel third persons, not parties to the suit, to produce title papers with which they have been entrusted by the parties, or those under whom they claim. That the

court abused its discretion in compelling the production of papers as evidence, is no ground for reversing a judgment.

7. To authorize the reading of a copy of a deed alledged to be lost, it should appear that the party had in good faith, used diligence to find the original.

8. That a witness had seen and read an original lost deed, and reads the copy offered in evidence, and that he believed them to be the same, and that he had read the record of the registry thereof, and that the grantor had acknowledged to him that he had made such a deed, held sufficient proof to authorize the reading of the copy. See (6 *Dana*, 110; 2 *B. Mon.* 434.)

9. A party intending to rely on the 7 years statute of limitation, must not only show title, but also show that the land which he claims interferes with the land sued for.

10. When the chancellor decrees a sale, though he authorize the sale to be a private sale, the deed of the commissioner does not pass the title until it is approved by the court. (4 *Dana*, 186; 2 *B. Mon.* 411.)

Judge SIMPSON delivered the opinion of the court.

June 23.

Case stated.

This action of ejectment was brought by the appellees against the appellants for four thousand acres of land in the county of Grant. The suit was removed, by the agreement of the parties, to Gallatin county, where it was twice tried, the first trial resulted in a verdict for the defendants in the action, but a new trial having been awarded at the instance of the plaintiffs, they obtained a verdict and judgment on the second trial from which the defendants have appealed.

The title under which the plaintiffs claimed the land is as follows: A patent to John and Jordon Harris for 44,109¼ acres, dated 17th May, 1786—a deed from John Harris to John Fowler, dated 11th December, 1804, for an undivided moiety of the land embraced in the patent—a deed from Jordon Harris to John Fowler, dated 14th November, 1804, for the other undivided moiety thereof—a deed from John Fowler to Henry Banks, for 20,000 acres of the same land, bearing date the 18th December, 1802—a mortgage from Banks to Isham Talbot executed 2d November, 1814, and a conveyance by a commissioner after the death of Talbot to Dudley as his executor, under a decree of the general court, directing a sale of the land contained in the mortgage for the payment of the debt therein specified, which deed embraces the land in controversy. The deed from Jordon Harris to John

Fowler had not been legally recorded, in consequence of which it devolved upon the plaintiffs to prove its execution before they could give it in evidence upon the trial. The deed from Fowler to Banks had been acknowledged before the clerk of the Lexington district court on the 21st of December, 1802, and recorded in his office. It had also been recorded in the office of the general court in October, 1813, on the certificate of acknowledgment made by the clerk of the Lexington district court. On the 2d of March, 1814, the same deed was acknowledged by the grantor before the clerk of the Fayette county court, who certified the acknowledgement thereof to the clerk of the *Boone* county court, and this certificate was recorded in the clerk's office of the general court, but the deed itself was not recorded in the clerk's office of any court upon the last named certificate.

1. Clerks of district courts in Kentucky were authorized to take the acknowledgment of deeds only when the land lay in the district of which they were clerks, (*Statute Law,* 436,) nor had such clerks authority to take such acknowledgment after the time for recording the deed had elapsed. (3 *Marshall,* 43.)

The clerk of a district court was only authorized to take the acknowledgment of deeds for the conveyance of land lying within the district. (1 *vol. M. and B. St. Law,* 436.) As this land was not within the Lexington district, the clerk of that court had no authority to take the acknowledgment of the deed, or to record it in his office, and as the time for recording the deed had expired in 1814, the clerk of the Fayette county court had no power at that time, to take and certify an acknowledgement of its execution. (*Moore v. Farrow,* 3 *Mar.* 43.) So that this deed was not legally recorded either in the office of the Lexington district court, or in the clerk's office of the general court, and could not have been recorded under the certificate of acknowledgement made by the clerk of the Fayette county court in 1814.

Upon the first trial in the circuit court, the plaintiffs read in evidence the patent to John and Jordon Harris, the deed from John Harris to Fowler for one moiety of the land, copies of the deed from Fowler to Banks, and of the deed from Banks to Talbot, together with the record of the suit in the general court for the sale of the land, to satisfy the debt secured by the

mortgage to Talbot, and the deed of conveyance to Talbot's executor, made by the commissioner under a decree of the court rendered in that suit. They also offered as evidence, a copy of the deed from Jordon Harris to Fowler, which was excluded by the court upon the ground that the deed had not been recorded according to law. The original deed was in the possession of Lewis Myers, under whom some of the defendants claimed, and to whom the plaintiffs had given notice to produce it on the trial, but as Myers was not a defendant in the action, the notice to produce the deed was unavailing, either to compel its introduction, or to justify the introduction of secondary testimony of its execution and contents. The plaintiffs also proved that the defendants were in possession of the land sued for, at the time the suit was commenced. Upon the plaintiffs' testimony, the court instructed the jury peremptorily, to find for the defendant, and they rendered a verdict accordingly. A new trial having been awarded, the first question presented for our consideration, is the correctness of the decision of the court below, in sustaining the plaintiffs motion for a new trial.

To sustain this motion, the plaintiffs filed two affidavits, but as we are of opinion that the new trial should have been granted, upon the ground that the court erred in the instruction given by it to the jury, to find for the defendant as in a case of a non suit, we do not deem it necessary to notice any of the other grounds, or to decide upon the sufficiency of the affidavits, to have authorized the court to award a new trial.

It does not appear by the bill of exceptions that any of the title papers, relied upon by the plaintiffs to show title to the land in contest, were excluded from the consideration of the jury, except the copy of the deed from Jordon Harris, one of the patentees, to Fowler. But as the deed from John Harris, the other patentee, conveyed the title to an undivided moiety of the land to Fowler, it is obvious that if no

2. Where a plaintiff in ejectment shows a right to recover any part of the land sued for, though not as much as he claims, he has a right to recover to that extent, and a

DICKERSON'S
HEIRS, &c.
*vs.*
TALROT'S
Ex'ONS., &c.

peremptory in-
struction to find
for defendant is
erroneous.

3. A ground
assigned for a
new trial such
as appears to
have existed, if
the bill of ex-
ceptions does
not show it,
will not avail
in the court of
appeals.

4. A title ac-
quired by a
grantor with
warranty after
the date of his
conveyance, en-
ures to the ben-
efit of his prior
grantee. (4 *Mon-
roe*, 430; 7 *Da-
na*, 76.)

other defect in the title existed, the plaintiffs had a
right to recover one undivided half of the land sued for,
and the instruction given by the court was erroneous.
The copy of the deed from Fowler to Banks, may have
been excluded from the jury, which would have brok-
en the connection of the plaintiffs title, and have au-
thorized the instruction that was given. But accord-
ing to the bill of exception, a copy of the deed was
given in evidence to the jury, and it does not appear
to have been objected to at the time, nor to have been
subsequently excluded.

It is true, that one of the plaintiff's grounds for a
new trial was, that the court erred in excluding the
copies of the deeds of Jordon Harris to Fowler, and
Fowler to Banks. The parties, however, may assign
any cause they think proper, why a new trial should be
granted, and the grounds filed by them may attribute
to the court acts which were not done by it, and
decisions which it never made. It is the peculiar of-
fice of a bill of exceptions to give a history of the
proceedings of the court, and to it we have exclusive-
ly to direct our attention, to ascertain and determine
what evidence was before the jury, and what instruc-
tions were given to them by the court. Taking the
bill of exceptions as our guide in this case, it appears
that the copy of the deed from Fowler to Banks, was
read as evidence upon the trial without objection, and
remained before the jury at the time they were in-
structed by the court to find for the defendants.

It is contended, however, that as the deed from
Fowler to Banks was executed in 1802, and Fowler
subsequently obtained his deed from John Harris,
that Banks had only an equitable right to land, inas-
much as his grantor had not the legal title when the
deed was executed; or at most, that the subsequent
title acquired by Fowler, only enured to the benefit
of his grantee by way of estoppel, but did not invest
him with the legal title, and therefore as the plaintiffs
did not have the legal title, they could not maintain
this action of ejectment, and no new trial should have

been awarded.  The deed from Fowler to Banks con-
tains a covenant of general warranty, and it has been
repeatedly decided by this court, that in such a case
a title, subsequently acquired by the grantor, enures
to the benefit of the prior grantee, so as, by operation
of law, to psss the legal title to him.   *Logan v. Steele's
Heirs*, 4 *Mon.* 430; *Logan v. Moore*, 7 *Dana*, 76.

It is also contended, that no new trial should have
been granted, because the land in contest had been
sold in 1827 by the sheriff of Grant county, under an
execution against John Fowler, and purchased by
Lewis Myers, to whom the sheriff, who made the sale,
had conveyed it.   It is only necessary to remark, in
regard to this objection to the action of the court in
granting the new trial, that there was no legal evi-
dence before the jury that any such sale or convey-
ance had been made.   Lewis Myers was examined
by the plaintiffs as a witness, who, in detailing his
testimony, stated that some of the defendants were
his vendees, and that he had purchased the land at a
sale made by the sheriff of Grant, under an execution
against John Fowler.   It is stated in the bill of ex-
ceptions, that the "witness presented a copy of a re-
cord, *Jones v. Trotter*, &c., as the case in which the
execution issued."   But it is not stated that the
record, or any part of it, or the sheriff's deed, was
read in evidence to the jury.   There was no evidence
introduced by the defendants, and it cannot be pre-
sumed that the plaintiffs would have given in evi-
dence the record and sheriff's deed to have proved
that Myers had purchased the land.   It is only stated
in the bill of exceptions that the witness presented a
copy of the record.   There is no statement that it
was given in evidence before the jury, and conse-
quently no question can arise in reference to it.   And
if the record should be regarded as evidence before
the jury, it did not show that Myers had acquired any
title to the land in contest, because it did not contain
the execution under which the sale is alleged to have
been made, nor was there any evidence that the exe-

DICKERSON'S
HEIRS, &c.
*vs.*
TALBOT'S
EX'ORS., &c.

5. The bill of
exceptions filed
in the suit is
the only means
by which the
court of appeals
must   decide
what evidence
was before, and
what excluded
from the jury.

DICKERSON'S
HEIRS, &c.
vs.
TALBOT'S
EX'ORS., &c.

cution, which was not in the record, had been levied upon this land, and no conveyance by the sheriff was read in evidence, although the witness stated that he claimed the land under a sheriff's deed. We are of opinion, therefore, that the new trial was properly granted.

6. The court has the right to compel third persons, not parties to the suit, to produce title papers with which they have been intrusted by the parties or those under whom they claim. That the court abused its discretion in compelling the production of papers as evidence, is no ground for reversing a judgment.

After a new trial had been granted, a rule was awarded against Lewis Myers at the instance of the plaintiffs, requiring him to produce the original deeds executed by John and Jordan Harris to John Fowler. He produced the deeds according to the requsition contained in the rule, and the execution of the deed from Jordan Harris to Fowler, having been proved by competent testimony, was used upon the second trial. The appellants have assigned for error, that the court improperly required Myers to produce these deeds, which they contend were the muniments of his title under which they claimed, and which he should not have been compelled to surrender. If both parties claimed under these deeds, the appellants were not prejudiced by their production, and if the plaintiffs in the action alone claimed under them, they had a right to require Myers to surrender them, more especially as he had come into the possession of them as the administrators of Rout, who was the agent of Fowler, and had been entrusted as such with the deeds, to enable him to manage the property for the benefit of his principal. But if the court had transcended its legitimate powers, in compelling Myers to produce these deeds, that would not render the judgment in this action of ejectment erroneous, or furnish any reason for its reversal.

7. To authorize the reading of a copy of a deed alleged to be lost, it should appear that the party had in good faith used diligence to find the original.

On the second trial, the plaintiffs produced the original deed from Jordan Harris to John Fowler, and made proof of its execution. The only objection to the title, exhibited by the plaintiffs on this trial, that we deem worthy of consideration, relates to the proof made of the execution and contents of the deed from Fowler to Banks, and the law applicable thereto, as expounded by the court below, a copy of which deed had been used on the first trial, without objection.

The sufficiency of the foundation laid by the proof adduced of the loss of the deed, to authorize the introduction of secondary evidence of its execution and contents, is questioned by the assignment of errors, on the ground that no affidavit was made by the executor of Talbot, that he had searched for and could not find this deed amongst the papers of his testator. Lindsey proved that he, as agent for the plaintiffs in the preparation of the suit, had caused the papers of Talbot to be examined for the original deed, and had examined them himself. That he had personally examined the records in the county court of Fayette, in the general court, court of appeals, the Grant, Gallatin, and Boone county courts, and had written to the clerks of the county courts of Pendleton and Campbell, and received answers from them that there was no deed from Fowler to Banks in their office, and that he had not been able to find the original deed in any of the offices or places mentioned by him, although he found on the records of the Fayette county court, and general court, a deed corresponding with the copies from the offices of said courts purporting to be a deed from Fowler to Banks. He further proved, also, that Henry Banks died about the year 1832, and that he had no family, but resided by himself at the time of his death. That he had never been able to discover who got possession of Banks' papers, or what became of them. In our opinion, the loss of the deed is fully and satisfactorily established by this testimony. It was obviously to the interest of the plaintiffs that the original deed should be found, and the fair presumption is, that it was searched for by their agent in good faith. He examined every place where there was any probability of finding it, and, although, in strictness, the executor of Talbot, who was one of the lessors, should have made an affidavit that he could not find it among the papers of his testator, yet we regard the want of his affidavit sufficiently supplied by the statements of the agent, particularly as there is no reason to suppose that Talbot

DICKERSON'S
HEIRS, &c.
vs.
TALBOT'S
Ex'ORS., &c.

14bm 67
110 725

Dickerson's
Heirs, &c.
vs.
Talbot's
Ex'ors., &c.

ever had the possession of the deed, but the probability is, that it was retained by Banks, and was with his papers at the time of his death. The deed was on record in the office of the general court, and in the office of the Fayette county court, and although it had not been legally recorded in either office, yet the parties, no doubt, supposed that it had been, and in such a case, it is usual for a grantor to pass over to the grantee the original deed under which he claims the land even where he makes an absolute sale; but when only a mortgage is given, as in this case, there is still less reason to suppose that the title deeds of the mortgagor had been delivered to the mortgagee. We think, therefore, that there was a sufficient foundation laid for the admission of secondary evidence on this subject.

After testimony had been introduced before the jury conducing to show the existence of this deed from Fowler to Banks, and that the copy thereof from one of said clerk's offices, which was in evidence, was a correct copy, the court instructed the jury "that the copy of the deed from Fowler to Banks was not evidence that the original deed was executed by Fowler, but only that such a record existed as certified by the clerk; neither was the testimony of the witness that a like record existed in the office of the general court evidence of the execution of the original, but was evidence only that such record existed." The plaintiffs were allowed to read copies of said deeds, and the certificate thereon, for the purpose mentioned in this instruction.

Before said instruction was given, the plaintiffs had proved that Fowler stated in his lifetime he had made a deed to Banks, including the land in contest, and that Banks had taken possession in 1815 or 1816, if not previously, by his agents, of part, if not all, of the land embraced in Banks' deed to him. They had also proved the existence of a marked boundary corresponding with the date of the copy of the deed which was read to the jury, and with the description of the

8. That a witness had seen and read an original lost deed, and reads the copy offered in evidence, and that he believed them to be the same, and that he had read the record

boundary of the land contained therein. A witness also testified he had seen the original deed in the hands of Banks, and believed the copy made out by the clerk, from his records, was a correct copy of the original. A deed from Fowler to Banks, executed in 1813, for one thousand acres of adjacent land, which called for a corner of the land previously conveyed to said Banks, and thus recognized the execution of the prior deed, was also read in evidence. It was also proved by a witness that he had examined the records of the Fayette county court contained in the deed book of the district court, and the records of the general court, and found in each, a deed from Fowler to Banks, on record, corresponding with the copies from the clerks of said courts, produced upon the trial.

The plaintiffs relied upon the existence of these records as an additional circumstance to establish the fact that Fowler had executed to Banks a deed for the land in contest, and the question to be considered is, whether it was right to allow the plaintiffs to prove their existence, and rely upon them for this purpose? We are of opinion that it was, under the peculiar circumstances of this case.

When we take into consideration the age of the records, which had been made by accredited officers of the commonwealth, together with the other proof tending to show the execution of the deed, and the possession of the land under it, and the fact that the original deed had been lost, we are not able to perceive any valid reason why the existence of such records, if not competent evidence either of the due execution of the deed or of its contents, should not be admissible as testimony, conducing, when combined with the other circumstances, to prove that the deed relied upon from Fowler to Banks had been executed by the former.

The other testimony authorized the introduction of the copy of the deed before the jury, as evidence of the contents of the original, so that the permission to prove that a record of this copy existed in the office

DICKERSON'S HEIRS, &c.
vs.
TALBOT'S Ex'ORS., &c.

of the registry thereof, and that the grantor had acknowledged to him that he had made such a deed, held sufficient proof to authorize the reading of the copy. (See 6 Dana, 110; 2 B. Monroe, 434.)

of the Lexington district court, and.in the office of the general court, for many years, did not enable the plaintiffs to read to the jury a written document which would have been otherwise excluded.

Testimony of a similar kind was deemed admissible in the cases of *Cook's heirs v. Totton's heirs*, 6 *Dana*, 110, and in *Taylor v. Cox*, 2 *B. Monroe*, 434.

The defendants gave in· evidence a patent to Markham for thirteen thousand one hundred and twenty-two acres of land, and made some proof tending to show that it covered the land sued for. This patent was younger than the one that the plaintiffs claimed under. They also offered in evidence the fol-. lowing written · documents, with the assignments thereon :

"REGISTER's OFFICE, 3*d November*, 1817. Agreeable to the several acts of assembly, I have exposed to sale the following tract of land, viz: Bernard Markham, six thousand five hundred and sixty-one acres, third rate, in the county of Campbell, lying on the waters of Eagle creek, entered, surveyed, and patented for Bernard Markham, for the tax and costs due thereon, for the year 1816, being three dollars and seventy-five cents, subject to redemption within two years from the date, at the rate of one hundred per cent. per annum, and Mark Hardin purchased the same. *John M. Foster, Register*."

AUDITOR's OFFICE, 4*th November*, 1819. I do hereby certify that the within mentioned tract of land has not been redeemed. *J. Madison, Aud*.

"Fifteen hundred acres, the choice in one body surrendered to Francis Worley, 22d October, 1817. *M. Hardin*."

The balance of the within, not surrendered to Frances Worley, I assign to Samuel Allison all the right and title I derived under the within purchase. 24th June, 1826. *Mark Hardin*.

For myself and the other heirs of Samuel Allison, deceased, I hereby assign to Lewis Myers all the

right and title of the within, for value received, without any recourse upon me or them. November 20th 1833. *H. S. Allison.*

Received this 17th day of November, 1818, from Mark Hardin, the sum of fifteen dollars and thirty-five cents, being the amount of the purchase money for a tract of land in Campbell county, in the third district of Kentucky, containing six thousand five hundred and sixty-one acres, on Eagle creek, sold under the acts of congress of March 5 and April 26th, 1816, to satisfy the direct tax of 1816, and additions thereto, due by B. Markham. *H. Daniel* for *John H. Morton*, collector designated by the Secretary of the Treasury in the state of Kentucky.

| | |
|---|---|
| For tax, | $12 79 |
| Addition of 20 per cent. | 2 56 |
| Dollars, | 15 35 |

*United States of America, 7th Circuit Kentucky District, Sct:* I do hereby certify that the within tract of land remains unredeemed. Given under my hand this 20th day of November, 1820. *Jno. H. Hanna, C. K. D. C.*

I have agreed, and hereby surrender to Francis Worley, of Philiadelphia, fifteen hundred acres of the within, the choice in one body, being what he claimed by deed. The balance I assign to Samuel Allison all the right I derived under the within purchase. 24th June, 1826. *M. Hardin.*

For myself and the other heirs of Samuel Allison, deceased, I hereby assign to Lewis Myers all the right and title of the within, for value received, without any recourse on me or them. November 20th, 1833. *H. S. Allison.*

These writings were objected to by the plaintiffs, and excluded as evidence by the court. The object of the defendants who claimed under Myers, in introducing them as testimony, was to make out a title, that would enable them to rely upon the limitation of seven years. Without noticing the other objections to

9. A party intending to rely upon the 7 years statute of limitation, must not only show title, but also show that the land which

he claims inter-
feres with the
land sued for.

their sufficiency to effect the contemplated object, the
fact that it did not appear that the land which they
embraced was the same that was in contest in this
suit, rendered them wholly irrelevant, and made it the
duty of the court to reject them as testimony. The
patent to Markham is for thirteen thousand one hun-
dred and twenty-two acres of land. The tract of
land sold for taxes, contains six thousand five hundred
and sixty-one. If it be a part of the same land, and
whether it is or not did not appear, still, there was noth-
ing to show that it was the part that interferes with the
four thousand acres sued for. The only description of
the land in the certificate is that which refers to it as ly-
ing on the waters of Eagle creek. The land in con-
test does not lie 'on the waters of Eagle, but on the
waters of Licking, at some considerable distance
from the waters of Eagle. The evidence therefore
furnished by the writings themselves, which was the
only testimony upon the subject, tends to prove that
the land sold for taxes was not any part of the land
in controversy, but was, if a part of Markham's
claim of thirteen thousand one hundred and twenty-
two acres, that part which did not interfere with the
land sued for by the plaintiffs.

10. Where the
chancellor de-
crees a sale,
though he au-
thorize the sale
to be a private
sale, the deed
of the commis-
sioner does not
pass the title
until it is ap-
proved by the
court. (4 *Dana*,
186; 2 *B. Mon-
roe*, 411.)

The defendants also introduced as evidence, sundry
deeds which had been executed by Willis Blanton,
as commissioner, under a decree of the general court,
which was rendered in the suit brought to foreclose
the mortgage executed by Banks to Talbot. The de-
cree authorized Blanton to make sales of the land,
as commissioner, either publicly or privately, and to
convey the lands sold by him to the purchasers, and
to make a report of his proceedings to the court. He,
however, failed to make a report of any conveyances
made by him as required by the decree, and conse-
quently, they had not been approved of or confirmed
by the court. These deeds were, therefore, ineffectual
to invest the grantees with the legal title to the land,
or with any right which they could render available
in an action of ejectment. *Campbell v. Johnston*, 4

*Dana,* 186; *Busey v. Hardin,* 2 B. Monroe, 411. The title of these vendees can only be perfected by an application to a court of chancery, where their rights can be investigated and determined.

It is however contended, that the defendants who had purchased of Blanton, as commissioner of the court, were not liable to be evicted under the title of Talbot, unless six months' notice to them had been given, to surrender the possession; and as there was no proof of notice, the verdict and judgment against them cannot be sustained on this point; the instruction of the court was, "that the jury should find against the defendants, provided they found that the possession had been demanded of them, and that they claimed to hold adversely to the plaintiffs before the institution of the suit, if otherwise, the verdict should be in their favor. Whether they held adversely to the title of Talbot or not, before the commencement of this suit, was a question of fact for the jury to determine; and although the evidence on this subject was somewhat vague, and it did not certainly show that all of the defendants claimed to hold adversely, yet the jury were authorized to infer from the testimony that such was the fact, and their verdict is not entirely destitute of proof to sustain it. The law is, as it was expounded by the court. If possession of the land sued for was demanded on behalf of the plaintiffs before this suit was commenced, and these defendants refused to deliver it, and claimed to hold it adversely, and not under Talbot's title, then they were not entitled to any notice to quit.

One other matter only is relied upon for a reversal of the judgment. The deed from Banks to Talbot contains certain reservations; and it is contended that the plaintiffs were not entitled to recover, unless they made it appear that these reservations did not embrace the land in controversy. The land conveyed from Banks to Talbot is in two separate tracts, one of sixteen thousand, the other of four thousand acres. A plat was used upon the trial by which it appeared

that the reservations mentioned in the deed, were a part of the sixteen thousand acres, and as the tract of four thousand acres is the one recovered in this suit, it sufficiently appeared that the reservation contained in the deed did not include any part of the land sued for.

It seems to be a matter of controversy between the parties, whether this plat was used upon the trial or not. But as the court certifies in the bill of exceptions, that it was offered in evidence with the other title papers, it must be regarded as constituting a part of the testimony before the jury; and whether it was read or referred to by the counsel in the argument of the cause, which is the point about which the circuit judge states he is uncertain, is wholly immaterial. If the testimony be sufficient to sustain the verdict, the failure of counsel to advert to some material part of it in the argument of the cause, cannot affect the validity of the finding of the jury.

No evidence of the purchase made by Myers of the land in contest, at the sheriff's sale, was offered on the trial, and therefore, it is not necessary to notice the objections urged against the validity of that purchase.

Some objections have been urged to the instructions given by the court with respect to the execution of the deed by Fowler to Banks. Whether such a deed was ever executed by Fowler was a question of fact for the jury to determine, and this question was, in our opinion, fairly submitted to them by the instruction of the court. The testimony on this subject, when duly considered, leaves no room for a reasonable doubt that such a deed as the one relied upon by the plaintiffs had been executed.

It is therefore considered by the court that said judgment be affirmed.

HARLAN, O'HARA, and B. and J. MONROE for appellants; LINDSEY for appellees.