## Kentucky River Coal Corporation v. Williams.

(Decided October 30, 1928.)

## Appeal from Letcher Circuit Court.

1. Estoppel.—After-acquired title passes by general warranty deed.

2. Estoppel.—Where original grantor conveyed land under general warranty deed to plaintiff's lessor before original grantor acquired title but at time when he was in possession of land, after-acquired title passed to lessor and was superior to title held under son of grantor who took land by descent.

3. Evidence.—Mere superintendent of work at coal mine may speak for company as to work he was doing, but was without authority to speak as to company's title to property; such matters not being within apparent scope of his authority.

4. Estoppel.—Where superintendent of work at coal mine had no authority to speak for company as to what land it claimed, and had no authority to speak for lessor of his company, holding property, neither company owning land nor its lessee employing superintendent was estopped to claim property by reason of anything that superintendent stated on occasion of public sale of property made before lease.

5. Mines and Minerals.—Superintendent of work at coal mine held without power to release any right of corporation in land held by it, "superintendent" being one who superintends, a director and overseer.

6. Principal and Agent.—General agent for management of property of his principal has implied authority to do what is usual and customary in business, and is limited to management of business under his control, and cannot bind principal by performance of acts beyond his apparent scope of authority.

7 Mines and Minerals.—Under lease by coal mining company of tract of land covering usual mining privileges, lessee may take what is reasonably necessary for mining operations, and may exercise reasonable judgment in determining what is necessary and where houses and other structures may be built.

P. T. WHEELER and MORGAN & HARVIE for appellant.

R. MONROE FIELDS for appellee.

Opinion of the Court by Commissioner Hobson—
Reversing.

On july 8, 1887, I. D. Whittaker and wife conveyed to T. P. Trigg, trustee, all the coal and other minerals under a tract of land owned by him in Letcher county and with all the usual mining privileges. The Kentucky River Coal Corporation holds under T. P. Trigg, trustee, and it on January 1, 1919, executed a lease on this and other land to the Marion Coal Company by which the lessee was to pay a royalty on the coal. On March 21, 1921, the lessor and the lessee brought this action against Ed. Williams, alleging in their petition the above facts and that the defendant was setting up a claim to a part of the boundary and attempting to unlawfully seize the title and possession of the property. They prayed that their title be quieted, and that the defendant be enjoined from interfering in any way with them in the ownership or possession of the mineral, mining rights, etc. The defendant answered denying the allegations of the petition, and setting up title in him to the land. Proof was taken, and on final hearing the court dismissed the petition. The plaintiffs appeal.

I. D. Whittaker died, and after his death his estate was divided between his children, and Williams bought from one of the sons the land now in controversy. It is stipulated in the record that both of the parties show a record title from I. D. Whittaker. The land in controversy is a part of the tract conveyed by James Back to I. D. Whittaker on July 14, 1887, or six days after the deed was made by Whittaker to Trigg, trustee. But the proof is undisputed that the trade was made between Whittaker and Back before the deed was made to Trigg, trustee, and that Whittaker was in possession of the land at the time this deed was made, although no deed had been executed. The defendant insists that Trigg got no title to the land under his deed because Whittaker, when the deed was made, had not obtained title from Back. But Whittaker's deed to Trigg is made with general warranty, and the rule is well settled that an after-acquired title passes by a general warranty deed.

"The deed from Fowler to Banks contains a covenant of general warranty, and it has been repeatedly decided by this court, that in such a case a title, subsequently acquired by the grantor, inures to the benefit of the prior grantee, so as, by opera-

tion of law, to pass the legal title to him. (Logan v. Steele's Heirs, 4 T. B. Mon. 430; Logan v. Moore, 7 Dana 76.)'' Dickerson's Heirs v. Talbot's Ex'rs, 14 B. Mon. 60.

To same effect, see Churchill v. Terrell, 1 Bush, 54; Perkins v. Coleman, 90 Ky. 611, 14 S. W. 640, 12 Ky. Law Rep. 501.

The title held under Trigg, trustee, is therefore superior to the title held under the son of Whittaker, who took the land from him by descent.

The defendant showed that the land was put up at public sale in January, 1918, and that Henry Smith, who was the superintendent of the Marion Coal Company, got up at the sale and said for the people not to be afraid to buy, that the Marion Coal Company had no claim to this land, and this is relied on to estop the plaintiffs in this action. Smith testified that he was not present at the sale and knew nothing about it, but was then in Tennessee. While there is some conflict in the testimony, the proof is clear that the Marion Coal Company did not begin work until the spring of 1918. The first work for which Smith was paid was paid for by a check given in April. Smith was simply employed to open the mine and make the necessary preparations for work. He was simply, so far as the proof shows, superintendent of the work. He had no authority to speak for the company as to what land it claimed or would claim.

A mere superintendent of work might speak for the company as to the work he was doing, but as to its title to other property, or what other property the company would claim, he was without authority to speak for it. Such matters were not within the apparent scope of his authority, under the evidence, and plainly he had no authority at all to speak for the Kentucky River Coal Corporation, which was the real owner of the property. At the time of this sale, while there was a contract between the two corporations, the lease had not been executed. The court is therefore clearly of the opinion that neither of the appellants is estopped to claim the property by reason of anything that Smith said on that occasion. Under the facts shown Smith had no power to release any right of the corporation in the land held by it.

''The word 'superintendent,' in its ordinary acceptation, means, one who superintends, a director, and overseer; and, in the absence of an un-

dertaking defining, fixing, and enlarging his duties, his duties must be taken to be such, and such only, as the ordinary acceptation of the word would imply. There is nothing in the word 'superintendent,' in the common use of it, which implies that he shall be a collector of moneys, much less a financial agent for the settlement of accounts and the handling of the revenues of a city or town: Lafayette v. James, 92 Ind. 240, 47 Am. Rep. 140.'' Salem v. McClintock, 16 Ind. App. 660, 46 N. E. 40, 59 Am. St. R. 333.

''A general agent for the management of the business or property of his principal has an authority coextensive in scope with the business intrusted to him, that is, he has implied authority to do in the business or with the property, what is usual and customary to do in the business or with property of the same kind in the same locality.'' 2 C. J. p. 643, sec. 287.

''Such agent's authority is limited, as is that of any other agent, to the management and transaction of the business under his control, and, however broad the terms of his authority, he cannot bind his principal by the performance of any act beyond the ordinary needs of his principal's business, or in other words, beyond the apparent and ostensible scope of his authority. Thus an agent to manage a business or property cannot sell or dispose of it, make permanent improvements, additions, or alterations, or grant any easements or licenses or impose other burdens upon his principal's property.'' 2 C. J. p. 644, sec. 288.

Lastly, it is insisted that the plaintiffs do not need this land in their mining operations, and have other lands on which they may place the houses and other structures. But under such a lease as this the lessee is allowed to use a reasonable judgment, and he cannot be confined to one tract rather than another. He may take what is reasonably necessary and he may exercise a reasonable judgment in determining what is necessary and where the houses may be built. The evidence does not show any unreasonable conduct on the part of the lessee, and under the clear weight of the evidence the ground proposed to be used in reasonably necessary in the operations.

Judgment reversed, and cause remanded for a judgment in favor of the plaintiffs as prayed in the petition.