### MAGNOLIA PIPELINE CO. v. McCARTER.
### No. 2278.

Court of Civil Appeals of Texas. Beaumont.
June 9, 1932.

**WALKER, J.**

Appellant, Magnolia Pipeline Company, was plaintiff below, appellee, J. P. McCarter, was defendant, and the appeal is from an order of the district court sustaining a general demurrer to appellant's petition. The following facts were alleged by appellant in its first amended original petition upon which the case was tried:

First. As the owner of 1,100 acres of the Chas. Williams league of land, situated about 3½ or 4 miles west of the city of Beaumont, Jefferson county, Tex., J. J. Hebert, on the 30th day of December, 1911, for $150, granted to the trustees of Magnolia Petroleum Company and their successors in trust and assigns the right and privilege to lay, maintain, operate, inspect, repair, and remove, at will, a pipe line over and through the following described portion of the 1,100 acres: "The said pipe line shall be laid north of the Neches canal and shall run parallel therewith and between said canal and the outside field levee on said farm as the same now exists, the levee referred to being about 20 ft. from said canal"; and for an additional $150 the Magnolia Petroleum Company, its successors and assigns, were granted the right to lay, operate, and maintain an additional pipe line across the 1,100 acres of land, to be laid parallel to and not exceeding 4 feet from the first line, together with the right of ingress and egress to and from the 1,100 acres for the purposes named in the grant. It was further stipulated in the grant that the Magnolia Petroleum Company was to pay for all damage done to "crops, fences, or other improvements" belonging to Hebert, his heirs or assigns, in the use of the rights granted, and certain obligations were imposed upon it to restore the drainage, repair levees, etc., on the 1,100 acres of land, and the manner of constructing the pipe line across the land was also stipulated. It was recited in the grant that the 1,100 acres of land was the rice farm of the grantee, and that "the work on said pipe line shall be conducted in a manner so as not to interfere with grantor's farming operations." It was also stipulated that "the said grantor, his heirs and assigns, shall use and enjoy the said premises for all purposes, except the purposes herein granted to the said trustees." The grantees, their successors and assigns, were given the right "to have and to hold the easement or right-of-way herein granted" as long as it was "maintained and operated" for the purposes of the grant. Appellant, as grantee, owns and holds the rights and title granted to the trustees by L. J. Hebert.

Second. After the execution of the grant, appellant, or its predecessor in title, paid the said L. J. Hebert, or his representatives in interest, for additional pipe lines through said

Minor & Lipscomb, of Beaumont, for appellant.

Orgain, Carroll & Bell and Crook, Lefler, Cunningham & Murphy, all of Beaumont, for appellee.

land. Under authority of the easement, Magnolia Petroleum Company entered upon and laid upon said land a pipe line, and appellant, as successor in interest to Magnolia Petroleum Company, now maintains pipe lines through and upon the tract of land described in said instrument, which it operates as a common carrier.

Third. The pipe lines maintained by appellant across the 1,100 acres of land are trunk lines, having a pressure of 300 pounds to the square inch, and are in daily use by appellant for transporting oil. Because of the nature and situation of the pipe lines and the uses which they serve and the necessity for constant inspection and maintenance, it is necessary, for appellant to have reasonable and proper enjoyment of the easement, that it have exclusive possession of the right of way, or at least such possession of the ground above said lines as will permit free access thereto for the purpose of maintaining, inspecting, repairing, operating, and removing said lines, at will; and any interference with this right of access might, in emergencies, cause serious damage and loss to appellant in leakage of oil, and might result in a temporary shutdown and impairment of its facilities; also it is necessary from time to time to remove soil from said pipe lines in order to replace corroded joints therein, to repair leaks, and otherwise inspect and maintain them.

Fourth. After appellant had acquired its easement and had constructed its pipe lines across the land, and while it was operating them as a common carrier, Gist Realty Company acquired title to a part of the land, servient to appellant's easement, which it subdivided into buildings lots, with map and plat recorded in the office of the county clerk of Jefferson county, Tex., known as the Sunnyside addition to the city of Beaumont, and said Gist Realty Company has offered and is offering said lots, as thus described and dedicated, for sale to the public. Gist Realty Company acquired its title to this property with notice of appellant's easement.

Fifth. Appellant's easement, with its pipe lines, crosses lots Nos. 24 and 25 in block 3 of Sunnyside addition, and, with actual knowledge of this fact, appellee, J. P. McCarter, purchased these lots from Gist Realty Company and thereafter, on or about the 9th day of February, 1932, began the construction of a building upon his lots Nos. 24 and 25. Though the building was intended to be of a permanent nature, appellee proposed to build it above and across one or more of appellant's pipe lines. At the time this suit was filed, mechanics and carpenters had begun work upon the foundations of said building, and, prior to the institution of this suit, appellee had constructed upon his said two lots a garage upon and over appellant's pipe lines and had also laid a part of the foundation for the main building; and, at the time of the institution of this suit, these improvements were in process of construction.

Sixth. The purpose of this suit was to restrain appellee from the erection of his building, designated by appellant's petition as a dwelling, over, above, and across its pipe lines, as they exist upon said lots Nos. 24 and 25.

As grounds of relief, based upon the facts just stated, appellant pleaded the following issues of injuries to its rights under its easement that would be occasioned by the erection of the dwelling above and across its pipe lines:

"(a) If said building, now in course of erection by the defendant, should be completed over and upon plaintiff's easement, the erection thereof would seriously impair, hinder, interfere with and deprive the plaintiff of its right of ingress and egress in and to said pipe lines over the area covered by the building now in the course of construction by the said defendant and the construction of said building over said plaintiff's pipe lines would render the maintenance and repair thereof impracticable, if not impossible. The construction of said building by the defendant would defeat, and be destructive of, that part of plaintiff's easement which might be covered by the threatened improvements now in course of construction by the said defendant, J. P. McCarter, and if said defendant should be allowed to complete the improvements now in course of construction over said right of way, plaintiff would be effectively deprived of the rights acquired under the grant from the said L. J. Hebert as well as the free enjoyment of its right of ingress and egress over and upon said lands for the purpose of maintaining its pipe lines, as aforesaid; and plaintiff alleges on information and belief that if said defendant, J. P. McCarter, should not be enjoined and restrained, he will complete the improvements already commenced by him over and upon plaintiff's right of way. The contemplated construction of permanent improvements by said defendant over plaintiff's lines is an unlawful invasion of plaintiff's rights acquired under the right-of-way contract; and if said improvements were completed, they would create a private nuisance as against the plaintiff, in this: one or more of said lines would be under said proposed building; said proposed building is intended to be of a permanent nature; the building of the nature and character which defendant threatens to construct would render it necessary, in order to get to plaintiff's lines, to tunnel under the proposed building, or else cut the line or lines and abandon the same; such work would be burdensome, and expensive, and would subject the plaintiff to delay and impairment of its facilities in making deliveries of oil, subjecting the plaintiff

to further loss and damage, and increase the hazard in operation.

"(b) Plaintiff further alleges to the court, on account of the matters and things set forth in the next preceding paragraph, that if said defendant should be allowed to construct said improvements, it will suffer irreparable injury and damage in being deprived of its right of free ingress and egress over and upon the area of its said pipe lines covered, or which may be covered, by defendant's said improvements, for which said plaintiff has no plain, adequate and complete remedy at law.

"(c) Plaintiff further alleged upon information and belief that at the time of the creation of the easement the lands which said easement traversed were agricultural lands, and the use of the same by the grantor for agricultural or similar purposes was not inconsistent with the rights acquired by plaintiff, but it was not contemplated by plaintiff's predecessors in title and the grantor of the easement that a dwelling house or dwelling houses, or other similar improvements, should be erected over said pipe lines, and the said J. P. McCarter acquired whatever rights he has in and to said Lots 24 and 25 of the Sunnyside Addition subject to, and burdened with, and with the knowledge of, plaintiff's said easement and all rights incident thereto.

"(d) Plaintiff further shows to the court that if said improvements should be erected over and upon said plaintiff's pipe lines, the danger from fire and consequent injury to the building and occupants of the building from said lines would be increased, and there is possibility that plaintiff will be subjected to actions for damages arising from such injury or injuries to persons or property. In addition to the foregoing, there is a possibility of gas pockets forming under said dwelling, resulting from unavoidable leaks in said lines, increasing the hazard to persons and property, by reason whereof the construction of said contemplated improvements would render the exercise of plaintiff's rights under said grant difficult and burdensome."

The prayer was for a temporary injunction to restrain the erection of the building, and, upon final hearing, that the injunction be made permanent and for general and equitable relief. The temporary injunction was granted as prayed for. Upon final hearing appellee answered by general demurrer, special exceptions, and by special defenses. The general demurrer was in all things sustained, and the injunction dissolved; but, upon notice of appeal by appellant, the injunction was kept in force pending the appeal.

## Opinion.

[1-5] For the purpose of enjoying the benefits secured to it by its easement, appellant, under the allegations of its petition, owns the dominant estate in that portion of appellee's lots Nos. 24 and 25, occupied by its pipe lines; but it owns no rights in these lots not requisite to the fair and reasonable enjoyment of its easement. Kelsay v. Lone Star Gas Company (Tex. Civ. App.) 296 S. W. 954. Notwithstanding the grant under which appellant holds, appellee, both by the express reservation in the grant by Hebert and by the general principles of the law of easements, has the right of full dominion and use of his lots, except in so far as the limitation thereof is essential to the reasonable enjoyment by appellant of its easement. 9 R. C. L. 797. What may be considered a proper and reasonable use by appellee of his lots, as distinguished from an unreasonable and improper use, is a question of fact to be determined by the jury. Murray v. Dickson, 57 Tex. Civ. App. 620, 123 S. W. 179. To sustain its prayer for relief by injunction, appellant rested under the burden not only of pleading facts showing that the erection by appellee of the dwelling house above and across its pipe lines would be an unreasonable and improper use by him of his lots, but also to negative, by allegations of fact, every reasonable inference, arising upon the facts stated, from which it might be deduced that appellant might not, under other supposable facts connected with the subject-matter, be entitled to the relief sought. 32 C. J. 322. The rule was thus stated by Judge Sharp, speaking for the Commission of Appeals, in Harding v. W. L. Pearson & Co., 48 S.W.(2d) 964, 966: "The rule is settled in this state that a petition for injunction must clearly and distinctly state all the material and essential elements entitling the party to relief, and negativing every reasonable inference arising upon the facts so stated, that the party might not, under other pertinent supposable facts, be entitled to relief. Gillis v. Rosenheimer, 64 Tex. 246; Moody v. Cox, 54 Tex. 492; Martin v. Sykes, 25 Tex. Supp. 197; Carter v. Griffin, 32 Tex. 212; Smith v. Frederick, 32 Tex. 256; Harrison v. Crumb, 1 White & W. Civ. Cas. Ct. App. § 992; Cameron v. White, 3 Tex. 152; Henderson v. Morrill, 12 Tex. 1; Carlin v. Hudson, 12 Tex. 203, 62 Am. Dec. 521; Ferguson v. Herring, 49 Tex. 130; Whitman v. Willis, 51 Tex. 421; Spencer v. Rosenthall, 58 Tex. 4; Purinton v. Davis, 66 Tex. 456, 1 S. W. 343; Braden v. Gose, 57 Tex. 37; Wheeler v. Gray, 5 Tex. Civ. App. 12, 23 S. W. 821."

Appellant was required to plead facts and not conclusions, and, where only conclusions were pleaded, the facts necessary to raise the issues to support the conclusions cannot be read by us into the petition. Baer, Sternberg & Cohen, Inc., v. Snodgrass (Tex. Civ. App.) 42 S.W.(2d) 292; Franks v. Brown (Tex. Civ. App.) 43 S.W.(2d) 613; Ewing v. Duncan, 81 Tex. 230, 16 S. W. 1000.

Under the principles of pleading just stated, the petition did not state a cause of action on the theory that the erection of the

dwelling would deprive appellant of the necessary access to its pipe lines. In this respect the petition was defective because there was no specific allegation as to the size of the house, nor to what extent it would project over or across the pipe lines; nor was there any allegation as to the character of the foundation nor that any of the foundation would rest immediately over the pipe lines; nor was there any allegation as to how high the floor of the building would be above the pipe line. The pleadings failed to negative the fact that appellee was preparing to build his house high enough above the ground to allow appellant free and easy access to its pipe lines for the purpose of inspection, repair, maintenance, and removal; also the petition failed to negative the fact that appellee would, at all times, afford appellant free and easy access to its pipe lines. Such affirmative and negative allegations were necessary to show that the erection of the building would deprive appellant of the necessary access to its pipe lines for the proper enjoyment of its easement. It is true that appellant alleged that appellee had already erected his garage over and across its pipe lines, but no relief was prayed for as against this act. The prayer was only that appellee be restrained from erecting the dwelling house.

■ Appellee asserts that the petition was fatally defective because there was no allegation that "by the expenditure of a reasonable sum appellant would have a reasonable access to its pipe lines." There was nothing in the petition calling for this allegation; that is, it does not reasonably appear from the facts alleged in the petition that, if the house is built, a condition might arise where appellant, by the expenditure of a reasonable sum of money, could secure for itself a "reasonable access to its pipe lines." If the house is built above the pipe lines so as to interfere with their maintenance, operation, repair and removal, this condition could be remedied, on the allegations of the petition, only by the removal of the house or by raising it high enough above the ground as to afford reasonable access to the pipe lines, and appellant could not secure this relief without the aid of a court of equity.

We now come to the following allegations of the petition: (a) The pipe lines·have a pressure of 300 pounds to the square inch; (b) whole joints corrode and leaks form in them; (c) there is a possibility of gas pockets forming under the house, resulting from unavoidable leaks in the pipe lines; (d) from these risks there arises danger from fire and consequent injury to the building and occupants of the building, by reason of which appellant would "be subjected to actions for damages arising from such injuries to persons or property." By the express terms of the grant under which appellant holds, it agreed "to pay all damage which may arise to crops, fences or other improvements belonging to said L. J. Hebert, his heirs or assigns, which may be caused from laying, erecting, maintaining and operating said pipe lines." If appellee has the right to construct and occupy his dwelling house above and across appellant's pipe lines, then appellant must protect him from injuries from its pipe lines in the use and enjoyment of his house. The facts pleaded by appellant, as just enumerated, would create a dangerous situation, and would impose upon it a heavy burden. We think these facts clearly raised the issue of an unreasonable and improper use by appellee of that part of his lots occupied by the pipe lines, and that, these being issues of fact, it was error to sustain the general demurrer.

■ Against this construction of the petition, appellee says that appellant failed to allege "whether by the expenditure of a reasonable sum appellant's pipe lines could be removed and relocated at a reasonable expense." On authority of Kelsay v. Lone Star Gas Co., supra, if the plaintiff in an injunction suit, at a reasonable expense, can remove his pipe lines from under the house about to be built and relocate them, it may be necessary, on certain contingencies, that an issue of fact be pleaded against this duty. But we do not think the facts of the Kelsay Case control this case. The grant in this case recited affirmatively that the 1,100 acres of land, made servient to appellant's easement, constituted the "rice farm" of the grantor. Appellant alleged that at the time of the creation of the easement the 1,100 acres of land was agricultural land, and at that time its use for pipe line purposes did not interfere with its use for agricultural purposes. The grant recited that the land was located 3½ or 4 miles from the city of Beaumont, and it was further alleged that the parties to the grant did not contemplate, at the time of the creation of the easement, "that a dwelling house or other similar improvements should be erected over said pipe lines." It was further alleged that the land covered by the easement had been cut up into lots and blocks for residence purposes and was being sold for such purposes. It was further alleged that the pipe lines were trunk lines and were in daily use by appellant for transporting oil, and to cut the lines would be expensive. On the allegations, the failure to allege specially that the pipe lines could not be removed from under the house and relocated at a reasonable cost did not render the petition bad on general demurrer for two reasons: First, on the facts alleged, appellant raised the issue, and negatived a defense thereto, that in no event was it bound to remove and relocate its pipe lines; and, second, the facts pleaded raised the issue that the cost and expense of re-

moving and relocating the pipe lines would be unreasonable.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded for a new trial.