THE INDUSTRIAL GAS CO., APPELLANT, *v.* JONES ET AL., APPELLEES.

(Decided March 28, 1939.)

*Messrs. Fitzgibbon, Black & Fitzgibbon, Messrs. Meyer, Johnson & Kincaid* and *Mr. Thomas Potter,* for appellant.

*Messrs. Frazier, Holliday and Giffen,* for appellees.

SHERICK, P. J.  This is an appeal on questions of law and fact brought to this court by the plaintiff,

which was denied relief by the trial court. The matter by agreement was tried in this court upon the record made below, supplemented by additional evidence offered and received on behalf of the plaintiff.

From the petition and the evidence offered in support of its averments which are not controverted, inasmuch as the defendants offer no evidence in either court with respect thereto, we glean the following un-contradicted, proven facts:

In 1925 plaintiff's predecessor in interest acquired a pipe-line easement across the 140-acre farm then owned by Jesse M. and Mary Baughman. In July, 1931, this easement and the pipe line, constructed thereon between the respective dates, were purchased by and conveyed to plaintiff. These conveyances were at the time made matters of public record. The pipe line is of six-inch steel construction and is what is known as a high pressure line, conveying gas from the distant field of production to the public at Zanesville. At several places on the Baughman land the pipe line is visible. It pursues a comparatively straight course. Its direction and location can thereby be followed by the naked eye.

In 1934, the defendant, Earl J. Jones, acquired by deed all the No. 6 vein of coal under 100 acres of this land. In 1936, Earl J. Jones likewise acquired the remaining 40 acres. Both of these instruments of conveyance contain the following recital:

"Said premises are subject to a right of way for pipe line heretofore granted to The Industrial Gas Company." \

Since 1934, or thereafter, coal mining operations have been conducted on this farm by Earl J. Jones, The Jones Coal Company and The Earl J. Jones Coal Company which is now operating thereon. During the course of these operations, gob or waste has been removed from what we shall term the second entry, as

distinguished from a first entry opened in 1934, 1935 or 1936 at a distance of 700 to 1,000 feet from the second entry and operated by a lessee of Jones. This waste now covers 492 feet of the plaintiff's pipe line to an average depth of 4 to 5 feet.

It is further pleaded and proved that this waste contains sulphur and other chemical compounds, soluble in the water which seeps through the gob and impregnates the soil beneath it with chemicals which corrode steel; that this reaction accompanied with electrolysis will shortly cause pitting to occur in plaintiff's pipe line with subsequent danger, leakage and loss; and that the dumping of waste on and over its pipe line will prevent plaintiff from obtaining free access thereto in making necessary repairs. It is also shown that Jones or one of his companies, of which he is shown to be the moving spirit, as he has superintended all operations at entry two, has caused a tipple to be built over plaintiff's line and thereat made it inaccessible to plaintiff.

It is pleaded that defendants' coal operations interfere with plaintiff's grant; that such continued seepage, use and interference will cause irreparable damage; and that plaintiff has no adequate legal remedy. It is asked that the dumping of gob cease and defendants be required to remove the waste already dumped over the line; that the tipple be removed, or that defendants pay the cost of relocating the pipe line.

Earl J. Jones answers the plaintiff's complaint. He first admits certain averments and generally denies all else. As a second defense, after admitting construction of the pipe line in 1931, it is pleaded that plaintiff's easement in the premises covers only conveyance of gas from the 140-acre tract and adjoining premises and not from distant fields, that he had no knowledge of this fact until after he had acquired title and that plaintiff's use is now exceeding the terms of its

grant. The answering defendant also cross-petitions for damages. As previously indicated, defendants offer no evidence in support of such allegations or of the denials contained in the first defense. To the answer and cross-petition plaintiff by reply made general denial. It is therefore clear that the only controverted issue made by the pleadings and the evidence was the extent of plaintiff's pipe line grant.

This issue must be determined in plaintiff's favor. The terms of the easement admit of no other construction. It plainly states that it is "for the purpose of constructing, from time to time, and maintaining and operating, one or more lines of pipe for the transmission of natural gas, and with free ingress and egress to construct, operate, maintain and, from time to time, alter, repair and remove same." The fact that the grantors reserved the use and enjoyment of the surface does not restrict the grant. It contemplates surface use for agricultural purposes and not the erection of structures and the changing of surface contour by dumping injurious waste, containing chemicals, on plaintiff's pipe line. If such were permitted the grant might be impaired. The further fact that the grant provides for lines to be thereafter laid on the property to take care of future production on it and adjoining property does not limit the grant, but enlarges it by recognition of the future possibility that natural gas might thereafter be found on it. The easement's present purpose was clearly a large transportation line, not a line for local production purposes. The grantors or present owners are not here contesting. They and their grantee seem to have agreeably interpreted their grant. At least there is no evidence to the contrary.

The defendants present a further question for solution. It grows out of the following course of procedure. On June 30, 1938, trial was had. Thereafter,

on August 1, plaintiff moved for permission to amend its petition by substituting the words "Earl J. Jones" for the word "Jones" in the second named defendant. The motion was granted and the amendment made, so that the action then stood as against Earl J. Jones and The Earl J. Jones Coal Company. Its cause of action against The Jones Coal Company was then in fact abandoned, and seeming a new party substituted or brought into the case. On January 3, 1939, The Earl J. Jones Coal Company was served with summons, served upon its president and chief officer, Earl J. Jones. On January 18 following, the trial court entered its decree. It found the issues adversely to plaintiff and not only dismissed its petition, but also dismissed Earl J. Jones and The Jones Coal Company as improper parties to the suit. The court made no order respecting the amended or substituted party defendant other than its finding adverse to plaintiff. On the next day an appeal was perfected to this court.

The Earl J. Jones Coal Company, neither in the Court of Common Pleas nor in this court, has ever answered to the suit. It therefore is in default and stands as confessing the averments of the plaintiff's petition and its uncontradicted evidence to be true, unless it may be considered that the substituted company has adopted the answer of the individual defendant Earl J. Jones, who is its president. If such an assumption is to be indulged, then it must of course follow that it can stand in no better position with respect to the issues presented by the pleadings and the uncontradicted evidence than does Earl J. Jones in his individual capacity, and what has been said with reference to him is equally pertinent as to it, The Earl J. Jones Coal Company.

Defendants indirectly assert that amendment or substitution after a hearing of the cause is improper

and the substituted defendant has not had its day in court. This position is not tenable. Section 11363, General Code, clearly contemplated just what was done in this case. It recites:

"Before or after judgment, in furtherance of justice and on such terms as it deems proper, the court may amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party * * *."

It might further be aptly stated that this review is on law and fact, a trial *de novo,* in which The Earl J. Jones Coal Company had opportunity to plead and present any evidence that would advantage it.

Before further comment is made, it should be stated that there is evidence within the record to the effect that there was no deposit of gob over the plaintiff's pipe line prior to the opening of the second entry by Earl J. Jones; and that some waste has been dumped during the operation of the mine by The Earl J. Jones Coal Company. It is therefore clearly apparent that all of the gob has been accumulated during the mine's operation by Earl J. Jones and his two operating companies. The inference that all three operating agencies contributed their share is inescapable, for it is a matter of common knowledge that coal mine operation is constantly attended with the accumulation of waste.

We would now address ourselves to the testimony of the defendant, Jones, given before the trial court and in this court, when called for cross-examination. There is no doubt in the mind of any member of this court, when we consider his pleaded admission of the pipe line's construction in 1931; his claimed ignorance of it despite its partial visibility; the availability of the public record; the recitals of the deeds to him; his evasiveness and evident purpose to create confusion and to withhold the facts from the court; his demeanor, loss of memory and his positive refusal to answer ques-

tions concerning matters of which he had knowledge and of which he should have spoken freely; that he was deliberately prevaricating. The witness may count himself fortunate in escaping commitment for contempt.

There is one portion of his testimony, however, which the court does believe, and that is that Jones was the moving and principal spirit behind the mine's three operators; that he was the superintendent in charge throughout all its production; and that he as an individual, and superintendent of the two companies, and as president of The Earl J. Jones Coal Company, is responsible for the situation created and of which the plaintiff complains. We therefore draw the natural inference that The Jones Coal Company and The Earl J. Jones Coal Company are in fact Earl J. Jones.

It is said in *Auglaize Box Board Co.* v. *Hinton,* 100 Ohio St., 505, 518, 126 N. E., 881:

"There is a consistent determination by courts to look through corporate forms, and this disposition is shown with increasing firmness as the interests of justice require."

Clearly justice and equity warrant the granting of relief in this suit. We entertain a further conclusion in view of the matters herein recited. We are of positive conviction that a fraud has been attempted to be. perpetrated on the plaintiff by invocation of the doctrine of corporate legal entity. We therefore apply the reasoning and sound sense of justice found expressed in the first paragraph of the syllabus of *First National Bank of Chicago* v. *Trebein Co.,* 59 Ohio St., 316, 52 N. E., 834:

"But the fiction cannot be abused; a corporation cannot be formed [or so operated] for the purpose of accomplishing a fraud or other illegal act under the disguise of the fiction; and when this is made to appear, the fiction will be disregarded by the courts and

the acts of the real parties dealt with, as though no such corporation had been formed, on the ground that fraud vitiates everything into which it enters, including the most solemn acts of men.''

What Jones knew as an individual, he cannot unknow as president and superintendent of The Earl J. Jones Coal Company.

The prayer of the plaintiff's petition as to Earl J. Jones and The Earl J. Jones Coal Company is granted, and the cause remanded for execution in accordance herewith.

*Decree accordingly.*

LEMERT and MONTGOMERY, JJ., concur.