**OHIO FUEL GAS COMPANY, Plaintiff, v. SUN OIL COMPANY, Defendant.**

Common Pleas Court, Franklin County.

No. 201533. Decided June 4, 1958.

John F. Sisson, for plaintiff.
William M. Summer, for defendant.

## OPINION

By SATER, J.

On May 23, 1958, this Court issued a temporary restraining order against defendant and set the matter for hearing on May 27th. Hearing was then had, evidence adduced, and the matter was held for the filing of briefs and determination whether the above order should be continued or dissolved according to defendant's motion. Since then, the Court has carefully examined the record with its three exhibits and transcript of testimony, and also the authorities contained in the submitted briefs. The order of May 23rd shall be continued and a suitable entry may be submitted.

The case turns on conflicting interests of plaintiff and defendant in and to the land of Grant I. Strait at the northwest corner of Agler and Steltzer Roads in the City of Columbus. In 1927, plaintiff obtained from Strait, and duly filed for record, a right of way agreement authorizing

plaintiff to lay pipe lines across the Strait property, to maintain, operate, repair and replace them with the incidental right of ingress and egress. Being recorded, this document was there for all to see. Plaintiff soon thereafter laid a 16" line parallel to Agler Road and a few feet north of it. In 1956 it laid a second line, 24" in diameter, between the first line and Agler Road, parallel to both. The former line now carries gas at pressures between 40 and 100 pounds; the latter, at more than 200 pounds. A smaller, 4", line leads northward off of the 16" line up the center of Steltzer Road and is encased though the two main lines are not; obviously, its pressure is much less than that of its parent line. The 16" and 24" lines supply close to 40 percent of the gas entering Columbus.

On March 16, 1957, defendant leased the 200 foot square tract from Strait for the purpose of establishing a gasoline filling station thereon, and eight months later started construction. Section 8,b and 8,c of its lease authorize defendant to cancel the lease either if its installations cannot be established or continued without defending equitable litigation involving court order, or if title search discloses any easement which cannot be subordinated to defendant's leasehold; the easement is recorded, no indication of plaintiff's desire to subordinate its interest is shown, and the equitable litigation has been instituted. Late in 1957, defendant commenced its installation and largely completed them a month ago. Last to be constructed was a concrete pad or mat offering entrance from Agler Road; on it is a pump island rising 6" above the pad. The pad covers the 16" line and half of the 24" line. There is some evidence of recent but fruitless conversations between officials of plaintiff and defendant, concerning the safety risk, but even if this evidence was incompetent, there is still the recorded easement. There is also evidence that defendant · discussed its installation with the State Fire Marshal, but there is no evidence that the Marshal had any knowledge of the location or use of plaintiff's lines. It is agreed that there are here involved no statutes of Ohio, ordinances of Columbus, building regulations or regulatory orders of either the State Fire Marshal or the Public Utilities Commission.

Plaintiff has brought its action asking temporary and permanent injunctive relief against defendant's further construction, or use of its facilities in, over and across plaintiff's easement or right of way. From the record, if not also by judicial notice, it is clear that plaintiff is a public utility subject to great public interest; defendant, for the purpose of this case, is not. Plaintiff's petition, positively verified, alleges that "Said concrete slab and service island and the facilities related thereto, constitute a hazard to the operation of plaintiff's pipe lines and will continue to do so." We are not presently greatly impressed with the added financial burden imposed by the pad on plaintiff's right and duty of maintenance and repair flowing from construction and proposed use of its installation, but the quoted allegation is very broad and far-reaching. When we consider that the pump island is only 3½ x 4' from the center of the 16" line, and 14-14½ from the center

of the 24" high pressure line, the implications of that allegation are obvious. The hazard falls not on plaintiff but, by risk of fire or at least diminished or disrupted gas supply, squarely on the public and on Columbus' gas consumers who, aside from action by this Court, are protected by no statute, ordinance or regulation of any sort. For a discussion of such hazards, see Tennessee Gas Transmission Co. v. Bayless, 74 Fed. Supp. 258, 261 (3-5), which is far more relevant than the Babler case, post, cited by defendant, or the divided court opinion in Peoples Gas, etc. Co. v. Cook, etc. Co., 256 Ill. App. 357, wherein the line pressure of six pounds eliminated for all practical purposes any public interest such as is inherent in the case at bar. For the purpose of this proceeding, the burden of proof resting on plaintiff has been met. Nor on the record as it now stands may the doctrine of laches be successfully invoked by defendant. The status quo must be maintained lis pendens.

Though hastily drawn in the interest of prompt decision, the briefs filed by counsel have been most helpful to the Court who hereby expresses his appreciation for them. Both briefs cited **Besser v. Pipe Line Co., 57 Oh Ap 341**, but it is so factually different from the case at bar as to be of no assistance. Of defendant's two remaining Ohio citations, both dealt only with private easements for vehicular traffic; no hazard to the public was involved. Such particularly was Methodist Church v. Laws, 7 O. C. C., 211, holding that an easement for a private way may not be enlarged. And to much the same effect was **Gibbons v. Ebding, 70 Oh St 298, 307**. In this case the Court held that an easement gives only that "which is necessary for such reasonable enjoyment and use," yet on the next page the Court went on to state that the owner of the servient estate (here, the defendant) "is entitled to use it **for any purpose that does not interfere with the easement**"; and in the next paragraph the Court granted injunctive relief. Far more persuasive are **Industrial Gas Co. v. Jones, 62 Oh Ap 553** and **East Ohio Gas Co. v. Coal Co., 53 Abs 438, 442**, which latter case specifically recognized under not too dissimilar a situation, the hazard of interference with gas users in northeastern Ohio. Both of these cases granted injunctive relief.

Mullins v. Ry. Co. (Mo.) 104 S. W., 890, involving a sewer, recognized that the owner of the easement had paramount interest "until the reasonable purposes of the grant were satisfied." Perley v. Cambridge (Mass.) 108 N. E. 494, another sewer case, dealt with the claims of a trespassing municipality, and Babler v. Shell Pipe Line Co. (Mo.), 34 F. Supp. 10, involved no public utility or its service. We consider Kelsay v. Lone Star Gas Co. (Texas), 296 S. W. 954, Magnolia Pipeline Co. v. McCarter (Texas) 52 S. W. 2d, 663 and Gas Co. v. Cutrer (La.) 30 So. 2d, 864, all involving gas utility lines, as being far more closely in point. For other cases involving injunctive relief as a safeguard to the public and consumers of utility service, see Caroline P. and L. Co. v. Bowman, 51 S. E. 2d 191, 197 (power) and Moundsville Water Co. v. Sand Co., 19 S. E. 2d, 217, 219 (water).