James J. FLYNN and Patrick S. Boyle, d/b/a
Flynn and Boyle, a partnership,
Appellants,

v.

MICHIGAN–WISCONSIN PIPELINE
COMPANY, Appellee.

No. 52874.

Supreme Court of Iowa.

Sept. 5, 1968.

question gives defendant the right only "to come upon the land of the Plaintiffs to manually repair and inspect the 4 inch pipeline, with such hand tools as may be necessary to perform this function. That the Defendant has no vested interest in any specific width, on Plaintiffs' land, and after performing such necessary functions of maintaining, operating and inspecting the 4 inch gas pipeline, it would be the responsibility of the Defendant to immediately remove from the premises, leaving them in the condition they were prior to the performance of such necessary repairs, maintenance or inspection.

"It has further been the contention of the Plaintiffs that they have the right to use the surface of the land and to construct temporary and permanent structures over the 4 inch pipeline of the Defendant. It has been the contention and position of the Defendant, Michigan-Wisconsin Pipeline Company, that the right-of-way contract grants a 50 foot wide easement, and that the Plaintiffs have no right to construct any structure or building over said 4 inch pipeline.

"7. That in order for the District Court of Iowa, in and for Des Moines County, on appeal from the award of the Sheriff's Commission, to determine properly the amount of damages to the Plaintiffs caused by the taking of the permanent 50 foot right-of-way under the condemnation proceedings, it is essential and necessary that a determination as to the rights of the parties under the May 16, 1949 right-of-way contract be made, and for a construction of the terms and provisions of said right-of-way contract and a determination of the legal status thereof."

Defendant's answer asserts: "the width of its easement necessary to exercise its said rights is 50 feet, that is, 25 feet on each side of said 4 inch pipeline. Defendant further asserts that the easement which it obtained from Belle Sutton in 1949 prohibits the placement of any permanent structure or other obstructions over, through, upon, under and across the pipeline right-of-way."

Dailey, Dailey, Ruther & Bauer, Burlington, for appellants.

Pryor, Riley, Jones & Walsh, Burlington, and Lane & Waterman, Davenport, for appellee.

BECKER, Justice.

Plaintiffs filed suit for declaratory judgment under Iowa Rules of Civil Procedure, #261 et seq. They seek construction of a right-of-way contract for gas pipeline purposes which would adjudicate the rights and obligations of the parties to the contract and their successors in interest. Plaintiffs' petition alleges the right-of-way contract in

The issues were thus joined. The trial court's findings of fact may be summarized as follows:

1. In 1949 the property in question was owned by Belle Sutton.

2. May 16, 1949 she and her voluntary guardian executed the right-of-way contract [1] which read in pertinent part as follows: "Right-of-Way Contract For and in consideration of Twenty eight and 00/100 Dollars ($28.00) receipt of which hereby is acknowledged Belle Sutton and Farmers & Merchants Savings Bank, Gdn. of the property of Belle Sutton, Infirm * * * hereby grant to Michigan-Wisconsin Pipe Line Company, * * * the right to lay, maintain, operate, inspect and remove ~~a~~ gas or oil pipe line a four inch ~~or pipe lines and appurtenances and lay, or erect, maintain, operate, and remove telephone and telegraph and electrical lines and appurtenances~~ [2] over, through, upon, under and across the following described lands, together with the right of entrance and exit at convenient points for such purposes, in the County of Des Moines, State Iowa, to-wit:

" * * *

"Grantee agrees to replace in a good and workmanlike manner all tile cut in the construction or maintenance of said pipeline, with a continuous tile or pipe across the ditch extending at least twenty-four (24) inches on each side.

"Grantee agrees to pay for all damages to crops, loss of crops, services, fences, and premises occasioned by the laying, maintaining, operating, altering, or removing of said pipe line or pipe lines.

"Grantee herein agrees to indemnify and hold harmless the grantor from any liability for damages occasioned by the pipe line or pipe lines of said grantee, located within the easement herein granted, not caused by the negligence of the grantor, his agents, servants, or employees.

"~~Should more than one pipe line be laid under this grant at any time, by grantee or its assigns, an additional consideration equal to the consideration hereinabove recited, shall be paid for each line so laid after the first line.~~

" * * *

"Grantee agrees to pay for damages to growing crops and fences whether occasioned by any survey or any subsequent installations. If the amount of such damages cannot be agreed upon, they shall be determined by three disinterested arbitrators, one appointed by grantors, one by grantee and the third by the two so appointed. The written determination of the amount of damages made by any two of said arbitrators shall be final and conclusive.

"The said grantors shall have the right to fully use and enjoy the surface of said premises, except for the purpose hereinabove granted. All pipelines to be buried so as not to interfere with the cultivation of the farm.

"It is understood that the person securing this contract is without authority to make any agreement in respect of the subject matter hereof not herein expressed." The instrument was promptly recorded. (The instrument contains no reference to width of the easement.)

3. The four inch pipeline was laid in 1949 to service the City of Burlington.

4. The court took judicial notice the City of Burlington has a population of 30,000 or more, and an adequate and dependable supply of natural gas to a modern community is essential to public welfare.

---

1. Reference to the instrument in question as a contract is a misnomer which is accepted here. The instrument is actually a unilateral conveyance of an interest in realty resulting from prior negotiations and agreement between the parties.

2. The delineation was not noted in the court's findings but does occur on the original instrument.

See discussion at 17 Am.Jur.2d, Contracts, § 70, p. 409.

5. The gas pressures on the line vary from 375 pounds to 830 pounds and average 600 pounds per square inch.

6. Plaintiffs bought the property in 1962 subject to the easement which had been in operation some 13 years.

7. In 1966 an eight inch line was laid alongside the four inch line, both cross plaintiffs' property diagonally for 920 feet as indicated on Exhibit B (hereafter reproduced). The property is bounded on one side by U.S. Highway 34, on another side by State Highway #406 and on a third side by the railroad lines of the Chicago, Burlington and Quincy Railroad.

EXHIBIT B

8. Plaintiffs have erected buildings on the property as indicated in Exhibit B.

9. Hand tools have not been used extensively in construction and maintenance of pipelines since before 1949 and at that time 10 foot wide caterpillar tractors and other such equipment were in general use.

10. For many years and in the year 1949 sound industrial and engineering practices dictated the use of large machinery and equipment in the construction and maintenance of pipelines.

11. The worst enemey of the gas pipeline is corrosion and many pipelines which have now been in the ground for 20 years or more are being "renovated." In connection with the renovation of the lines the pipe is uncovered and removed from the ditch in which it has rested. It is then cleaned, inspected for leaks and given a new protective coating.

12. and 13. The heavy equipment used under sound industrial and engineering practices requires a 50 foot right-of-way for maintenance as well as construction.

14. Renovation, after 20 years or more, must be undertaken if the pipelines are to render satisfactory service.

15. While there is evidence that it is possible to lay or maintain a pipeline in a width of less than 50 feet, the evidence is overwhelming that a narrower width would seriously impede and slow the work and increase the hazards.

16. In connection with the inspection of the pipeline for leaks and other malfunctions, it is necessary to be able to view the surface of the ground above the line and this was as true in 1949 as it is today. Buildings and other structures erected over pipelines impede proper inspection and obviously seriously handicap the locating of leaks and the making of repairs.

After the foregoing factual determinations the trial court reviewed the numerous cases dealing with various aspects of the case and concluded the easement conveyed is 50 feet wide and the right-of-way contract prohibits plaintiff from constructing buildings or other obstructions on any part of the 50 foot right-of-way.

■ I. The case was tried to the court as a law action. In such cases we treat the matter as in the same forum in which it was tried below. Jackson Wholesale Florists v. Schappaugh Floral, 246 Iowa 1189, 1192, 70 N.W.2d 154. Rule of Civil Procedure 344 (f) (1) provides: "Findings of fact in a law action, which means generally any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial evidence."

The real question before us is whether the factual findings in this case, as pleaded and tried, justify the conclusion, *as a matter of law,* that the instrument in question conveyed a fifty foot right-of-way and prohibited building any structure or obstructions thereon. The trial court so found. We cannot agree.

### The Width of the Easement

II. The findings of fact made by the trial court do not justify the breadth and particularity of its conclusions of law. As noted in the judgment; "Many courts have been reluctant to fix the precise width of easements." As will be explained, we think this a wise reluctance. The matter is considered with a somewhat different procedural background in Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N.W.2d 333. In that case the easement was acquired by condemnation. The condemnation proceedings did not refer to width except to specify the pipe would be three and one-half inches in diameter. The trial court quieted title to the real estate "except a right-of-way across said real estate 3½ inches wide and 4,046 feet long obtained for pipeline purposes in a condemnation proceeding." In reversing, the Nebraska Court said at 64 N.W.2d, loc. cit. 337: "The decree of the district court should have quieted title to plaintiff's lands subject to the easement of the defendant for a pipeline across said lands to the ex-

tent reasonably required for the laying, re-laying, maintaining, and operating the pipe-line and the appurtenances thereto. Adequate remedy exists for determining the width of the easement reasonably required if it becomes controversial. Dormer v. Dreith, 145 Neb. 742, 18 N.W.2d 94. In 17 Am.Jur., Easements, § 97, p. 996, it is said: 'If a grant is specific in its terms, it is decisive of the limits of the easement. *If an easement is not specifically defined, the rule is that the easement need only be such as is reasonably necessary and convenient for the purpose for which it was created.*' We think the same rule applies irrespective of the method by which the easement was created. Where an easement is not specifically defined in a condemnation proceeding under the power of eminent domain, its enjoyment is ordinarily limited only by the necessity for its use under which the easement was acquired." [Emphasis supplied]

Here there is no evidence and no factual finding concerning the presently intended necessities of the parties. All evidence goes to sound industrial and engineering practices in connection with construction, maintenance and removal of pipelines of this general type and age. There is no evidence as to what is intended or necessary as to this particular pipeline. On the other hand plaintiffs seek a pronouncement that they can put a building over the pipeline. There is no evidence they intend to do so in the immediately foreseeable future and no evidence of any reasonable need to do so. In resolving these conflicts the trial court by way of declaratory judgment based on contract construction found as a matter of law the plaintiffs would have no right to build anywhere within 25 feet of either side of the line and no right to erect other obstructions in such area. This latter prohibition apparently is intended to prohibit any type covering of the fifty foot

area so as not to inhibit aerial inspection of the line for leaks.

■ All of this controversial finding is for the announced purpose of aiding the parties in a collateral lawsuit involving condemnation of an easement for the second, larger line. The judgment reads into the easement grant precise limits as to width of easement which were not put there by the parties. As will be noted, the courts have read into such instruments a general rule of law that such easements include such width as is reasonably necessary to the enjoyment of the easement. They have usually refrained, except where necessity dictates, from defining such widths in precise terms.

The reason for such judicial restraint is apparent when the facts of the decided cases are examined. Since this is a pipe-line case, with the special problems raised by the emergence of that industry, we shall confine our analysis of the cases largely to that field.[3]

In Williams v. Northern Natural Gas Company, 136 F.Supp. 514, an Iowa case decided by the Honorable Henry Graven as judge of the Northern District of Iowa, trial at law for damages, the grant was to operate pipe *lines* across grantor's property. The pipeline company felt a need to move the line due to instability of the soil in which it had been placed. The line was moved some 50 feet. In laying the new line, the company used a width of from 100 to 200 feet. The court held that such use of grantor's property was consistent with the easement and neither caused a new burden on the servient tenant nor used a width wider than reasonably necessary to lay the new line. We do not pass on the holding. We note only that use of 200 foot width was legally condoned as reasonably necessary under the facts and circumstances of the case.

3. Bina v. Bina, 213 Iowa 432, 239 N.W. 68, 78 A.L.R. 1216, deals with a simple farm road situation and is not controlling here as a determination of the exact width of the road. The principle that an easement, silent as to width, carries with it a right to use what is necessary is at least impliedly recognized.

In constrast to the above case we note a condemnation case, Texas Eastern Transmission Corporation v. Terzia, La.Ct.App., 138 So.2d 874, 876, 877, where a 20 inch gas pipeline was to be laid. The court held: "In the case before us plaintiff contends that a minimum of a fifty foot width is necessary for the purposes of maintenance, and to the contrary it is urged on behalf of defendant that a thirty foot width is completely adequate for such purpose. The record contains some material and pertinent testimony in support of each of these contentions, but we do not find that plaintiff has sustained its claim as to the necessity of a fifty foot grant by a preponderance of the evidence. It must be conceded that the fifty foot area would be more convenient, agreeable and satisfactory to plaintiff, but it cannot be concluded that such a width is necessary. *In the event of any need for the use of heavy equipment in connection with repairs or maintenance, the rights of ingress and egress, which are inherent in the use of the servitude granted, would authorize plaintiff to enter upon and use additional necessary areas subject to the co-existing right of defendant to claim damages occasioned thereby.*" [Emphasis supplied]

In Lone Star Gas Co. v. Childress, Tex. Civ.App., 187 S.W.2d 936, 937, 940 plaintiff sought damages incident to removal of a pipeline. The trial court assessed damages and added: " '[A] strip of land thirty feet wide for each right-of-way grant will be sufficient and reasonable for all use by the defendant under its easements, * *.' " The appellate court in reversing observed: "Since the deeds do not confine the defendant's use to a strip of land thirty feet wide, it is elementary that the court could not redefine the terms of the grant and restrict the use granted by the instruments on the testimony of a district foreman, absent fraud, accident or mistake. 'It is elementary that no agent has any implied authority to surrender the vested rights of his principal, * * *.' Bell v. Moody, Tex.Civ.App., 147 S.W.2d 852, writ dism., points 3–4, p. 855. See also: 2 Tex.Jur. p.

446, sec. 51; Kentucky River Coal Corp. v. Williams, 226 Ky. 93, 10 S.W.2d 617. It is clear to us that the amount of space reasonably needed in the past in any particular operation is a question of fact, and the testimony of the district foreman on such issue would be pertinent. But the defendant is entitled to use in the future as much of the land as each occasion may reasonably demand, and such testimony does not authorize the court to deprive the defendant of what has been legally granted to it by the terms of the right-of-way deeds."

In determining the width of the easement in absence of specified width, we must be cognizant that the rights of the parties are correlative. Each must use his right with due regard to the rights of the other. The use must be reasonable. 2 Thompson on Real Property, 1961 Replacement, § 427, p. 699. "The right of an owner of an easement and the right of the owner of the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both. Where a reservation of a right-of-way is made in a deed, the grantor only retains an easement to use the reserved part as a right-of-way, and the grantee may use the reserved part as he sees fit so long as it does not prevent the grantor from using it. Whether a particular use of the land by the servient owner, or by someone acting with his authorization, is an unreasonable interference is a question of fact for the jury. The owner of the servient estate may build over the easement if the use is not interfered with there being no right to light and air to the easement."

We will not attempt to analyze the cases further. Their pattern is consistent with the expression of opinion of the experts on both sides in this case; i. e. under certain circumstances the company may need as much as 200 feet width and under other circumstances and by using smaller equipment the company may be able to operate its line with a 15 foot width. The trial court acknowledged this disparity in its findings of fact. We think it was in-

correct to conclude as a matter of law the instrument granted a 50 foot width; no more, no less.

 We hold the only construction to be given this contract at this time is that the easement carries with it the right to use such width of property as is reasonably necessary to carry out the purposes of the easement, Annot., 28 A.L.R.2d 253, (1953). Plaintiffs have failed to prove "that the only rights granted to the Defendant in said right-of-way contract is the right to come upon the land of the Plaintiffs to manually repair and inspect the 4 inch pipeline, with such hand tools as may be necessary to perform this function." Their petition should therefore have been dismissed as to the request for such finding. Similarly, the facts found by the trial court do not establish acquisition of a 50 foot right-of-way as a matter of law.

Defendants did not seek establishment of a specific width but pleaded the right to use 50 feet as an affirmative defense. Dismissal of plaintiffs' petition therefore disposes of this feature of the case.

### Building Prohibition

██ III. For much the same reasons the court's ruling that plaintiffs may not build a structure or obstacle on the 50 foot strip must also be reversed.

In Central Kentucky Natural Gas Co. v. Huls, Ky.Ct.App., 241 S.W.2d 986, 987, 28 A.L.R.2d 621, the pipe line company had already moved its line once to allow a tobacco warehouse to be built. Property owner then tried to build small restaurant over the high pressure gas line. This action was enjoined. The width of the way was neither set out in the grant nor considered by the court. In passing on the question the court said: "Under the provisions of the grant of right of way above it becomes immediately apparent that the dominant and servient owners have correlative rights. The dominant owner has the

right to lay the line; he has the right of access to make repairs and properly patrol the line and make such use of easement as is reasonable, but with as little burden on the servient estate as the nature of the easement and the object will permit. It is not meant that he shall have exclusive control of the right of way. On the other hand the servient owner has the right to use the land in any way not inconsistent with the rights granted under the easement or which do not become an encroachment upon or interference with the means and facilities the owner of the easement may lawfully use."

Several additional cases have enjoined building directly over oil or pressure gas pipelines. Tide-Water Pipe Co. v. Blair Holding Co., Inc., 42 N.J. 591, 202 A.2d 405; Magnolia Pipeline Co. v. McCarter, Tex.Ct.Civ.App. 52 S.W.2d 663; Arkansas Louisiana Gas Co. v. Cutrer, La.Ct.App., 30 So.2d 864; Ohio Fuel Gas Company v. Sun Oil Company, Ohio Com.Pl., 164 N.E. 2d 922.

Ohio Fuel Gas Co. v. Sun Oil, ibid, is the only case cited where the building was not built or to be built directly over the pipeline itself. The peculiar physical conditions in that case involving a 16 inch gas main, a 24 inch gas main, a 4 inch gas main and proposed use by the property owner of the property for a filling station was held to justify an injunction against further building.

No case has been cited where the courts have held in advance of specific proposals, and in the absence of contractual language requiring such result, that all building on the full width of the easement is prohibited as a matter of law.

In Peoples G. L. & C. Co. v. Cook Lumber Terminal Co., 256 Ill.App. 357, 368, the court refused an injunction. The court recognized the rules heretofore noted in the following language: " 'On the other hand, the owner of the easement is entitled to its full enjoyment, together with every right

necessary to such enjoyment. He has no right, *merely for the sake of convenience*, to interfere with the owner's control and *beneficial use* of the land further than is *necessary* for the *reasonable* enjoyment of his easement.'"

We do not say a proposal to build directly over a high pressure gas line may not be enjoined as a result of appropriate factual showing. We hold a predetermination of the rights of the parties under generalized factual showings is inappropriate and contra to the rules of law noted. Since the facts found by the court do not justify the legal conclusion sought by plaintiffs; i. e. that they are entitled to build over any portion of the easement regardless of the circumstances existing at the time of building, plaintiffs' petition should have been dismissed as to such claim. Again, defendant merely asserted the easement prohibits placement of building or other obstacles over the easement as an affirmative defense. Dismissal of plaintiffs' petition also disposes of this feature of the case.

### Interpretation of Instrument

IV. We have thus far considered this matter, as did the trial court, entirely from the standpoint of reading into the contract implied agreements independent of the intent of the parties. The cases considered, and our own consideration, have been decided on a rule of law akin to, if not in fact based on, a constructive contract, or, more accurately, a contract implied in law.[4] This has been done in easement cases primarily on the basis of the exigencies of each given situation. Gulf Pipe Line Co. v. Thomason, Tex.Civ.App., 299 S.W. 532; Ohio Fuel Gas Company v. Sun Oil Company, Ohio Com.Pl., 164 N.E.2d 922; Industrial Gas Co. v. Jones et al., 62 Ohio App. 553, 24 N.E.2d 830; Pacific Gas & Electric Co. v. Minnette et al., 115 Cal.App.

2d 698, 252 P.2d 642; Ellard v. Goodall, 203 Ala. 476, 83 So. 568.

If the matter is considered from the perspective of an attempt to interpret the instrument in accordance with the intent of the parties the result reached here is the same.

■ The rules applicable to the construction of deeds generally apply with full force and effect to instruments conveying easements or other similar rights or privileges. Eastman v. Piper, 68 Cal.App. 554, 229 P. 1002, 1004; 28 C.J.S. Easements § 26, p. 680, n. 61.

In Switzer v. Pratt, 237 Iowa 788, 797, 23 N.W.2d 837, 842 we said: "'The main object in construing a deed is to ascertain the intention of the parties from the language used and to effectuate such intention where not inconsistent with any rule of law.' (citing cases)

"It is evident that the intention should govern when not in conflict with some established rule of law:

"'The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time. Hence, in the construction of deeds surrounding circumstances are accorded due weight. In the consideration of these various factors, the court will place itself as nearly as possible in the position of the parties when the instrument was executed.'"

■ In construing deeds the intent of the grantor as evidenced by the entire in-

---

4. "The distinction has also been stated that a contract implied in fact is an implied contract in which the intention is ascertained and enforced, while a contract implied in law is a mere fiction, the intention being disregarded, and the quasi contractual obligation being imposed by law to bring about justice, without regard to the intention of the parties." 17 C.J.S. Contracts § 4, p. 563.

strument is controlling. Crecelius v. Smith, 255 Iowa 1249, 125 N.W.2d 786. Both parties agree the pertinent provisions of this instrument are ambiguous in that the width of the easement is not defined. Extrinsic evidence to aid in interpretation was clearly admissible. Hamilton v. Wosepka, Iowa, 154 N.W.2d 164, 168.

■ Where a right-of-way has been conveyed or an easement granted the mere fact that the width of the way is not designated will not defeat the easement. 3 Tiffany, Real Property, 3 Ed. § 805, p. 331. At page 332 the same authority states: "If the width is not fixed by the terms of the grant, the grantee is ordinarily entitled to a way of such width as is sufficient to afford reasonable ingress and egress. And if the way is granted for a particular purpose, what is reasonably necessary for that purpose is to be considered, in the light of circumstances existing at the time of the grant and of circumstances thereafter coming into existence if they are such as may reasonably be presumed to have been within the contemplation and intention of the parties."

The trial court made no finding as to the intent of the parties. No extrinsic evidence was produced as to intent. Neither the evidence nor the instrument itself shows a manifestation of mutual assent to a 50 foot right-of-way by the grantor, her attorney, her guardian or the court that approved the grant. We do not charge those individuals with constructive knowledge of the needs and desires of the pipeline industry. Grantor cannot be said to have intended to give up 50 feet of right-of-way including a prohibition against building on any part of the strip thus established. The effect of this judgment is to limit the right to use the property to growing crops. The plain words of the grant are contra.

■

"The said grantors shall have the right to fully use and enjoy the surface of said premises, except for the purpose hereinabove granted."

■ If defendant wanted a specific easement width and specific prohibition against building, it could have spelled out the rights in the instrument or acquired them by condemnation. Then the grantor could have bargained or resisted on the basis of actual sale or taking. On the basis of interpretation of the contract between the parties we reach the same result noted in Divisions II and III. Both width of the easement available and any questions involving building on the right-of-way must be reserved until an actual controversy arises under specific fact situations then existing.

■ The intent of the parties cannot be determined here except by aid of legal fictions. As indicated, we do not believe such legal fictions should be extended to the degree of particularity reached here. The trial court recognized the need to go·beyond the intent of the parties by emphasizing the public necessities involved. These necessities are recognized by law and result in a grant of power of eminent domain to the pipeline company. They do not extend to the company the right to claim more for its privately purchased easement grant than is set out in the instrument itself.

V. We express no opinion as to relevancy of the correlative rights herein recognized to the question of damages for condemnation of a right-of-way for a new and additional pipeline. Accordingly this case is reversed and remanded for dismissal of plaintiffs' petition at plaintiffs' cost.

All Justices concur.