## Jeffries, et al. v. Huff, et al.

(Decided October 23, 1913).

### Appeal from Leslie Circuit Court.

Land—When Agreement as to Division Line Does Not Amount to a Warranty or Operate as an Estoppel.—When adjoining land owners, to settle a dispute as to the location of a line between them, enter into an agreement fixing its location, the agreement does not estop one of the parties from purchasing from a stranger an outstanding title, although the land so purchased may be on that side of the agreed line set apart to the other, unless the agreement contains a covenant of warranty.

CLEON K. CALVERT for appellants.

JAMES G. BEGLEY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In the year 1895 and prior thereto, Moses Hignite and James and John Huff owned a large body of land on Trace Branch in Leslie County. Hignite did not know exactly where his line ran as between him and the Huffs, nor did the Huffs know exactly where their lines ran as between them and Hignite. The result was that Hignite set up claim to land which was also claimed by the Huffs, and the Huffs set up claim to land that Hignite said belonged to him. To settle the disputes that were continually arising between Hignite on the one hand and the Huffs on the other as to the location of the line between their respective tracts of land, they entered into this written agreement:

"Agreement made and entered into between John M. Huff and James M. T. Huff and Moses Hignite this November 14, 1895: The said Huffs and Hignite has agreed on a conditional line beginning on two black gums, a corner of a 50 acre survey made in the name of John M. Huff on top of the ridge between Long Branch and the Meadow Fork of the Trace Branch; thence running with the top of said ridge to the end of said point; thence square across the Long Fork to a cliff; thence up said point from said cliff to the top of the ridge; thence running up said ridge to a line of a thousand acre survey made in the name of John Begley."

By this agreement the line between their respective lands was settled and the Huffs took all the land formerly

claimed by Hignite on the Long Fork of Trace Branch and Hignite took all the land formerly claimed by the Huffs on the Meadow Fork of Trace Branch.

Some years after this James Huff purchased two small tracts of land from outstanding title holders on the Hignite side of the conditional line established by the agreement. And this controversy grows out of the contention on the part of Hignite's heirs that the purchase of these outstanding titles by Huff inured to the benefit of Moses Hignite

As stated by counsel for appellants, "the sole question presented to the court by this appeal is, does the title which James M. T. Huff took to the John Begley and Blevins Huff patent on the Meadow Fork of Trace Branch, after the establishment of this division line, inure to the benefit of Moses Hignite and the appellants, who are his children and heirs at law, or does it not?"

The lower court held that it did not, and in this conclusion we concur.

The only effect of this agreement was that Hignite surrendered to the Huffs all right, title and interest in the land claimed by him on the Long Fork of Trace Branch, and the Huffs surrendered to Hignite all the land claimed by them on the Meadow Fork of Trace Branch. After this agreement was entered into neither could claim or assert title to any part of the land thus surrendered to the other. In other words, Hignite could not assert title to any of the land owned by the Huffs on that side of the conditional line set apart to them, nor could the Huffs assert title to any land owned by Hignite on that side of the conditional line set apart to him. The agreement, however, did not estop either of the parties from purchasing land from outstanding title holders. The agreement contains no clause of either special or general warranty. If it did there would be force in the argument of counsel for appellants that the purchase of these outstanding titles inured to the benefit of Hignite.

It is well settled that if a party conveys to another land with covenant of warranty, and the vendor afterwards comes into the possession of an outstanding title that conflicts with his warranty, his possession of it will inure to the benefit of his vendee. This is upon the theory that by his warranty of the title he estopped himself from thereafter disturbing the title he conveyed. This is all we understand the cases of Smith v. Mahan, 7 T. B. Mon., 228; Fitzhugh v. Tyler, 9 B. Mon., 559, and

Perkins v. Coleman, 90 Ky., 611; relied on by counsel for appellants to hold.

Under the agreement made between these parties the Huffs did not pretend to surrender to Hignite the title to any land to which they did not then set up claim. The writing only adjusted the rights of the parties respecting land to which they then asserted title. It did not and could not in any manner affect titles not owned by them or either of them. If the parties from whom Huff purchased the land had a title superior to the title of Hignite, their title was not of course affected by the agreement, and we are unable to perceive any good reason why this agreement denied to the Huffs the right to purchase these outstanding titles.

The judgment is affirmed.