## Smith v. Combs.

November 12, 1946.

T. E. Moore, Jr., for appellant.

Jesse Morgan for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—
Reversing in part, affirming in part.

B. W. Combs died intestate March 2, 1942, leaving as his only heirs, his widow, Belle Combs, and three adult children, E. R. Combs, Marcus Combs and Mabel Dowd. On May 14, 1942, Belle Combs and Mabel Dowd filed a petition against Marcus and E. R. Combs alleging that certain deeds executed by B. W. Combs to them, within five years prior to his death, were procured by undue influence.

It appears that in 1938 B. W. Combs conveyed to E. R. Combs the tract involved in this case. On March 9, 1940, Marcus joined with his father and their wives in conveying the same tract by a general warranty deed to E. R. Combs. In 1942, E. R. contracted with G. L. Smith for the sale of the timber rights. He gave Smith a deed for the timber in which he recited the 1940 deed as his source of title. The consideration for the timber was $6,500 to be paid as follows, $500 down, thereafter one-half of the proceeds of each sale of logs until E. R. had received $4,000, together with a mortgage in the amount of $2,500 on Smith's home. Smith was made a defend-

ant by amended petition. He answered pleading he was a bona fide purchaser. Marcus cross-petitioned.

After two judges had vacated the bench, Special Judge Joe D. Harkins rendered a judgment on February 3, 1944, declaring (1) that all deeds and contracts made by B. W. Combs during the last five years of his life were void and therefore canceled; (2) that G. L. Smith knew of B. W. Combs' condition when he was negotiating for the timber rights with his son, E. R., and that consequently the contract and the deed to Smith were void; and (3) that Smith was thereafter enjoined from cutting any more timber, although he was authorized to sell the cut timber and remit the proceeds to the court clerk.

Smith complied with the order until he had paid approximately $4,000 and had also paid the $2,500 secured by the mortgage. He then assumed that the injunction was terminated and began cutting timber for which he was promptly placed in contempt by motion of Marcus in August, 1945. The remaining timber was sold by the court for $3,625.

On November 28, 1945, an extended judgment was rendered declaring (1) that whatever title E. R. Combs had in the timber was acquired by Smith through estoppel at the contract price of $6,500 (one-third of this sum, subject to the widow's dower and certain advancements, was therefore allotted to E. R.); (2) that Mabel Dowd, having elected to ratify the sale after the deed was canceled at the contract price, was also estopped to claim an interest in the timber (one-third of the $6,500, subject to the widow's dower and certain advancements, was allotted Mabel); and (3) that Marcus had never agreed to the sale of the timber and therefore was entitled to one-third of all of the timber funds. The court indicated that Smith was entitled to a refund of one-third of $6,500, but Smith declined it.

On this appeal Smith contends that an estoppel lies against Marcus. He argues that the general warranty deed from Marcus and his father to E. R. was a conveyance of a present estate and that when Marcus inherited a one-third interest upon his father's death it inured to his (Smith's) benefit.

Marcus, on the other hand, contends (1) that the conveyance was an illegal attempt to convey an expec-

tancy and that Smith knew it; and (2) that an after-acquired interest does not inure to the benefit of the grantee or his privy when an expectancy is the subject of the conveyance.

On examining the deed from Marcus and his father to E. R., it seems to us that it was a conveyance of a present estate. It contained the usual words of bargain and sale and displayed no indication on its face that Marcus was attempting to convey an inheritable interest. Furthermore, Marcus had previously procured deeds from his father to a part of the tract, thereby claiming part ownership. It appears also that the deed to E. R. was executed to settle pending litigation between him and Marcus. Marcus argues, however, that the recitals in the chain of title show the land was conveyed to B. W. Combs only and that such a showing on the face of the deed proves that he asserted no present interest but only an expectancy. We can not agree with this argument. Regardless of the recitals in the chain of title, Marcus's father could have conveyed to him, and apparently did, a part of, or an interest in, the land, the deed to which may or may not have been recorded. The failure to recite such a conveyance to E. R.'s deed does not preclude his interest. Since we believe that Marcus did not convey a mere expectancy, it follows that the deed was not void in so far as he is concerned. See Hunt v. Smith, 191 Ky. 443, 230 S. W. 936, 17 A. L. R. 588. We therefore apply the rule that one who conveys land with a covenant of warranty to which he has no title, but which he subsequently acquires by deed, devise or descent will be estopped to claim the land against his warrantee to whom the title thereafter acquired inured by virtue of the conveyance and the covenant of warranty. Perkins v. Coleman, 90 Ky. 611, 14 S. W. 640, 12 Ky. Law Rep. 501; Jeffries v. Huff, 155 Ky. 460, 159 S. W. 993; Kentucky River Coal Corporation v. Williams, 226 Ky. 93, 10 S. W. 2d 617; War Fork Land Company v. Carr, 236 Ky. 453, 33 S. W. 2d 308. Here Marcus attempted to convey an undivided interest in the entire tract which he did not own (though apparently he was claiming some interest in it), but one-third of which he later acquired upon the death of his father. He is therefore estopped to claim this interest as against E. R. and his grantee, Smith.

We are confronted next with the argument that there

can be no estoppel because the lower court has declared void deeds executed by B. W. Combs, of which this was one, and likewise declared void the timber deed from E. R. to Smith. We are of the opinion that the lower court properly voided, because of undue influence by his sons, the deeds executed by B. W. to them as against him and his heirs claiming under him. However, the deed in which Marcus joined cannot be voided as to him for he would then be profiting rather than suffering from his own fraud. There was no undue influence exerted against him, but rather it was he who helped to exert it against his father, the co-grantor. Consequently, the warranty of Marcus to E. R. runs to Smith, thereby estopping Marcus for the same reason that the lower court estopped E. R.

It follows from what we have said that Marcus has no greater interest than his brother and sister in the timber and we do not reach the question of whether or not he may cross-appeal from that part of the judgment which estopped them.

Judgment reversed on the appeal, with directions that it be set aside and for the entry of a judgment in conformity with this opinion. Judgment affirmed on the cross-appeal.